Submitted September 24, 2015, affirmed February 3, 2016

## CITY OF PORTLAND,
*Plaintiff-Respondent,*

*v.*

## STEVEN ROY WEIGEL,
*Defendant-Appellant.*

Multnomah County Circuit Court
131053039; A155958

367 P3d 541

Peter Gartlan, Chief Defender, and David O. Ferry, Deputy Public Defender, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Michael A. Casper, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Lagesen, Judge, and Garrett, Judge.

LAGESEN, J.

**LAGESEN, J.**

Defendant conditionally pleaded guilty to one count of possession of a loaded firearm in public, in violation of Portland City Code (PCC) 14A.60.010, reserving a right to appeal the trial court's denials of his demurrer and his motion to suppress evidence that the gun seized from defendant was loaded. On appeal, he assigns error to both rulings. We reject defendant's challenge to the denial of his demurrer without written discussion. As to the motion to suppress, defendant argues that the trial court erred when it concluded that Article I, section 9, of the Oregon Constitution, permitted officers to handcuff him in the context of their otherwise lawful investigatory stop of defendant. We review to determine whether the trial court's factual findings are supported by constitutionally sufficient evidence in the record and whether the trial court correctly applied applicable principles of law, *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993), and affirm.

Consistently with our standard of review, we draw our statement of historical facts from the trial court's explicit findings, to the extent that the evidence in the record supports those findings. To the extent that the trial court did not make express findings, on a particular point, we state the facts in a manner consistent with the trial court's ultimate conclusion, so long as the record supports that view of the facts. *State v. Regnier*, 229 Or App.525, 527, 212 P3d 1269 (2009) (citing *Ball v. Gladden*, 250 Or 485, 443 P2d 621 (1968)).

A security guard in downtown Portland contacted 9-1-1 to report that defendant was extremely intoxicated and armed with a pistol and a baseball bat. Although the guard reported that defendant was being cooperative, the guard requested that police officers "come and help deal with it." Officers Barnard and Perry, among other officers, responded to the call. Barnard knew defendant because defendant had been one of Barnard's soldiers in the National Guard. The officers met at a staging area near defendant's reported location in order to figure out a safe way to address the situation.

Officers first tried to call both the security guard and defendant directly, but were unable to reach them. As a result, officers decided to approach defendant. Barnard offered to do so, because of his relationship with defendant. Before they approached, officers could see both the security guard and defendant. As Barnard approached defendant to talk to him, other officers provided lethal cover with assault rifles. At that time, the baseball bat was about 10 feet away from defendant, leaning against a building. The gun was in defendant's right front pocket and visible to officers once they were within a few feet of defendant.

As they approached defendant, Barnard directed defendant to put his hands up. Defendant complied, and Barnard handcuffed defendant in order to "make everything safe there while [officers were] investigating." Officers then removed the gun from defendant. It was loaded with five rounds.

Defendant was charged with one count of unlawful possession of a loaded firearm in public. He moved to suppress evidence of the gun. Although defendant did not dispute that officers lawfully stopped him, he contended that police had unlawfully converted that stop into an arrest without probable cause when they handcuffed defendant, in violation of Article I, section 9. He contended further that that unlawful arrest required suppression of the evidence that the gun seized from defendant was loaded. The trial court denied the motion, ruling that "officer safety" concerns authorized police to handcuff defendant when they did. On appeal, defendant challenges that ruling.

*State v. Bates*, 304 Or 519, 747 P2d 991 (1987), supplies the rule of decision in this case. *Bates* holds:

> "Article I, section 9, of the Oregon Constitution does not forbid an officer to take reasonable steps to protect himself or others if, during the course of a lawful encounter with a citizen, the officer develops a reasonable suspicion, based on specific and articulable facts, that the citizen might pose an immediate threat of serious physical injury to the officers or others then present."

*Id.* at 524. Where officers have a reasonable suspicion that the citizen might pose an immediate threat of serious

physical injury, then the question becomes whether the particular precautions taken are reasonable in view of "the nature and extent of the perceived danger and of the degree of intrusion or restraint resulting from the officer's conduct." *State v. Rickard*, 150 Or App 517, 526, 947 P2d 215, *rev den*, 326 Or 234 (1997). Courts must be careful to afford officers "considerable latitude to take safety precautions in such situations." *Bates*, 304 Or at 524. Thus, for example, in *State v. Austin*, 145 Or App 217, 224, 929 P2d 1022 (1996), we applied the *Bates* standard to conclude that an officer's act of pulling his firearm and directing the defendant down on the ground did not constitute an unlawful arrest where the defendant's admission that he had a BB gun gave rise to sufficient officer safety concerns to justify the officer's conduct.

Here, the specific, articulable facts gave officers a reasonable belief that defendant might pose an immediate threat of serious physical injury. Specifically, officers knew that defendant was armed with one easily accessible dangerous weapon (a gun), had another potentially dangerous weapon nearby (a baseball bat), was in public with those easily accessible weapons, was extremely intoxicated, and the security guard who was dealing with defendant had requested police assistance to deal with him. It was not unreasonable for officers to think that that combination of defendant's intoxication, defendant's weaponry, and defendant's presence in public meant that defendant might pose an immediate risk of serious physical injury to the security guard who was attempting to deal with defendant, to the responding officers, to defendant himself, or to an unsuspecting member of the public who happened to pass by the downtown scene. Although defendant had been cooperative, officers were not required to trust that defendant would remain that way, given the other circumstances that they confronted.

Further, officers' act of handcuffing defendant was not an unreasonable safety measure for officers to take under the circumstances. Defendant's gun and bat were both capable of inflicting serious bodily injury. Defendant's gun, in particular, which was in defendant's right front pocket, was easily reachable by defendant. We afford officers

"considerable latitude" in choice of precautionary measure when confronted with circumstances demonstrating that a defendant might pose an immediate risk of serious physical injury. When affording officers that latitude here, we are persuaded that securing defendant's hands with handcuffs was a reasonable precautionary measure to take in order to guard against the possibility of defendant accessing and discharging his weapon during the course of the investigatory stop.

Affirmed.