Argued and submitted July 31, 2008, vacated and remanded for further
proceedings February 11, appellant's petition for reconsideration filed
February 24 allowed by opinion April 15, 2009
See 227 Or App 413, 206 P3d 259 (2009)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## GLENN CHARLES PARKER,
*Defendant-Appellant.*

Multnomah County Circuit Court
0606-47424; A134163

202 P3d 205

Elizabeth A. Corbridge, Deputy Public Defender, argued the cause for appellant. On the brief were Peter Gartlan, Chief Defender, and Emily Schoonmaker, Deputy Public Defender, Legal Services Division, Office of Public Defense Services.

Robert M. Atkinson, Assistant Attorney General, argued the cause for respondent. On the brief were Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Anna M. Joyce, Assistant Attorney General.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Carson, Senior Judge.

HASELTON, P. J.

## HASELTON, P. J.

Defendant appeals from a judgment of conviction for carrying a concealed weapon, ORS 166.240(1), assigning error to the trial court's denial of defendant's motion to suppress evidence. Defendant argues that his consent, and, consequently, the discovery of the evidence, derived from a violation of his right under Article I, section 9, of the Oregon Constitution[1] to be free from unreasonable searches and seizures.[2] We conclude that the encounter may have been unlawful, depending on facts that neither party developed at trial, and that the encounter did lead to discovery of the evidence. In light of *State v. Ashbaugh*, 225 Or App 16, 200 P3d 149 (2008), we remand to the trial court for further factfinding.

The trial court expressly found both the police officers' and the defendant's accounts of the facts to be "accurate, and a fair recitation of what occurred." Consistently with that finding, the salient facts here are as follows: On May 23, 2006, defendant was a passenger in a pickup truck stopped by Portland Police Officers Cioeta and Boman for expired license plate tags. Boman asked the driver and the other passenger for their identification and obtained their information. Cioeta asked defendant if he had any outstanding warrants; defendant replied that he did not. Cioeta then asked for defendant's identification, wrote down defendant's information, returned the identification, and then immediately returned to the police vehicle.

The officers ran all the occupants' information and checked them for warrants. In the meantime, at least one additional police vehicle arrived on the scene. Boman then asked the driver and another passenger to get out of the truck. The driver was cited for driving while suspended.

---

[1] Article I, section 9, provides, in part:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure * * *."

[2] Defendant also contends that he was unlawfully seized under the Fourth Amendment to the United States Constitution. Because we remand under Article I, section 9, of the Oregon Constitution, we do not reach defendant's federal constitutional claims. *See MacPherson v. DAS*, 340 Or 117, 125-26, 130 P3d 308 (2006) (Oregon courts analyze state constitutional challenges before turning to federal constitutional challenges).

Boman conducted a patdown search of the other passenger, informed him he was under arrest for an outstanding warrant, and placed him in custody. Cioeta then approached defendant and asked him to get out of the truck. Cioeta asked defendant if he had any weapons; defendant denied that he did. Cioeta then asked for permission to search defendant, and defendant consented. Cioeta conducted a patdown search of defendant and retrieved a switchblade knife from defendant's pants pocket. Defendant was arrested and subsequently charged with carrying a concealed weapon.

Before trial, defendant moved to suppress the evidence. The trial court denied that motion, concluding that "regardless of anything that happened before, the consent was freely given and was voluntary." Following a stipulated facts trial, the court convicted defendant of carrying a concealed weapon, ORS 166.240(1).

On appeal, defendant assigns error to the trial court's denial of his motion to suppress. Defendant contends that he was unlawfully seized unsupported by reasonable suspicion and that the subsequent inculpatory physical evidence was obtained by exploitation of that unlawful seizure in violation of Article I, section 9. The state's sole response on appeal is that the encounter between defendant and the officer did not constitute a stop. The state argues that Cioeta did not stop defendant when he asked defendant for his identification because the record does not disclose that defendant was aware that he was the subject of an inquiry.

The state does not dispute that, on this record, Cioeta acted without reasonable suspicion or that, under the analysis of *State v. Hall*, 339 Or 7, 34-35, 115 P3d 908 (2005), defendant's consent to the search was sufficiently causally related to the officer's conduct that the former was the "exploited" product of the latter. *See id.* (after a defendant presents a minimal factual nexus between a defendant's consent to search and a prior, unlawful seizure, the state has the burden to prove that such consent was independent of, or only tenuously related to, the prior unlawful seizure).

The sole issue on appeal thus reduces to whether the encounter between defendant and the officers constituted a seizure under Article I, section 9. In *State v. Holmes*, 311 Or

400, 409-10, 813 P2d 28 (1991), the Supreme Court held that a person is "seized" for purposes of Article I, section 9, and therefore stopped,

> "(a) if a law enforcement officer intentionally and significantly restricts, interferes with, or otherwise deprives an individual of that individual's liberty or freedom of movement; or (b) whenever an individual believes that (a), above, has occurred and such belief is objectively reasonable in the circumstances."

In *Ashbaugh*, we explained the distinction between a *Holmes* type (a) and type (b) inquiry:

> "The court determines whether a stop of the first type—type (a)—has occurred without reference to the subjective belief of the defendant; the only relevant state of mind is the officer's. A type (b) inquiry examines the defendant's subjective belief and then, if the necessary belief is found, evaluates its reasonableness. *State v. Toevs*, 327 Or 525, 535, 964 P2d 1007 (1998)."

225 Or App at 23.

Consistently with the analysis recently announced in *Ashbaugh*, *see id.* at 23-24 (applying a *Holmes* type (b) inquiry), whether the encounter between the officer and defendant rises to the level of a *Holmes* type (b) stop is determined by the methodology in *Toevs*:

> " 'The court in *Holmes* held that a "seizure," which includes a stop, occurs under Article I, section 9, whenever a person *subjectively* believes that a law enforcement officer significantly has restricted or interfered with that person's liberty or freedom of movement *and* such a belief is *objectively reasonable* under the circumstances.' "

Ashbaugh, 225 Or App at 24 (quoting *Toevs*, 327 Or at 535) (emphasis in *Toevs*).

■    Thus, a *Holmes* type (b) inquiry implicates conjunctive subjective and objective components—*viz.*, the defendant subjectively believed that he or she was significantly restrained *and* that belief was objectively reasonable. Consequently, as the party bearing the burden of demonstrating the lawfulness of the search, the state can prevail against a *Holmes* type (b)-based motion to suppress if it disproves

*either* of those conjunctive components. That is, the state can prevail either (1) by proving that the defendant did not believe that the officer had significantly restrained or interfered with the defendant's freedom of movement or (2) if such a belief would not be objectively reasonable. *Id.* at 24. In assessing whether "such a belief is *objectively reasonable* under the circumstances," the operative inquiry is whether " 'a reasonable person in defendant's position *could have believed* that the officers significantly had restricted [his or her] liberty or freedom of movement.' " *Id.* at 25 (quoting *Toevs*, 327 Or at 535-36) (first emphasis in *Toevs*; second emphasis in *Ashbaugh*).

We begin with the objective component because—for reasons that will become apparent shortly—if the state were to prevail on that component, that would obviate the need for a remand. We conclude for the following reasons that, in the totality of the circumstances in this case, "a reasonable person in defendant's position could have believed" that he was not free to go. *Toevs*, 327 Or at 536. In that regard, we emphasize that the controlling inquiry is not whether *every* reasonable person *would* have so believed, but, instead, whether *a* reasonable person *could* have so believed. *Cf. Ashbaugh*, 225 Or App at 31-32 (Brewer, C. J., concurring).

In *Hall*, the Supreme Court determined that a police-citizen encounter is a stop if the encounter could cause a person reasonably to believe that he or she was the subject of a criminal investigation and, for that reason, that his or her liberty of movement has been significantly restricted. 339 Or at 17-19. Since *Hall*, "we have repeatedly held that, when a police officer obtains a person's identification and uses it to check for outstanding warrants or probation violations, the person has been stopped." *Ashbaugh*, 225 Or App at 27.

The circumstances in *State v. Highley*, 219 Or App 100, 180 P3d 1230 (2008), are most closely analogous to those presented here. In *Highley*, a police officer asked the defendant, a passenger, if he was on probation, and thereafter requested and obtained the defendant's identification. He then wrote down the defendant's information, returned the identification, and then immediately walked back to the police vehicle. *Id.* at 102-03. We explained that

"a reasonable person whose identification information has been written down by a police officer who has just inquired about the person's probationary status would * * * understand that he or she was the subject of an investigation * * * [and] would believe that the officer wrote down the identifying information and then immediately returned to his car * * * in order to run some type of records check."

*Id.* at 108; *cf. State v. Rider*, 216 Or App 308, 314, 172 P3d 274 (2007), *rev dismissed as improvidently allowed*, 345 Or 595 (2008) (the encounter escalated into a stop when the defendant heard the officer order a warrants check).

■ In this case, the officer asked for defendant's identification and information just after inquiring whether defendant had any outstanding warrants. Thus, as in *Highley*, we conclude that a reasonable person in defendant's situation could understand that he or she was the subject of an investigation. *See Ashbaugh*, 225 Or App at 28 ("[T]he underlying principle is that a person who knows that he or she is being investigated by a police officer during an encounter could reasonably believe that, for that reason, his or her freedom of movement has been restrained.").

■ Our analysis in that regard necessitates a remand for the trial court to address, and render findings, as to whether, before Cioeta elicited defendant's consent to search, defendant subjectively believed that the officers had significantly restricted his freedom of movement. As noted, the trial court's denial of suppression here rested solely on its determination that defendant's consent to search was voluntary. *See* 225 Or App at 613. That determination is, analytically, legally and factually distinct from the question of whether defendant believed that he was not free to go before his consent to search was sought and obtained. Most obviously, even if a defendant voluntarily consents to a search, the fruits of the search must be suppressed if the consent was the unattenuated product of a predicate unlawful stop. *See Hall*, 339 Or at 34-35.[3]

---

[3] As noted, 225 Or App at 613, the state does not, on appeal, raise an attenuation argument.

We therefore remand to the trial court for such a determination. If the court finds that the state has proved that defendant did not have the requisite subjective belief, the court should reinstate defendant's conviction. If the court determines that defendant did subjectively hold that belief, however, the evidence found during the search of defendant's person must be suppressed. *Ashbaugh*, 225 Or App at 28.

Vacated and remanded for further proceedings.