Submitted July 28, 2009, vacated and remanded January 27, 2010

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## SHARI LYN LOVELL,
*Defendant-Appellant.*

Lincoln County Circuit Court
055051; A137229

226 P3d 76

Peter Gartlan, Chief Defender, Appellate Division, and Erik Blumenthal, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Michael A. Casper, Assistant Attorney General, filed the brief for respondent.

Before Rosenblum, Presiding Judge, and Brewer, Chief Judge, and Riggs, Senior Judge.

ROSENBLUM, P. J.

**ROSENBLUM, P. J.**

Defendant was charged with possession of a controlled substance, ORS 475.840(3), after the police found methamphetamine during a consensual search of defendant's backpack. Defendant moved to suppress evidence of the methamphetamine as well as statements that she made after having consented to the search, arguing that her consent was the product of an illegal stop. The trial court denied the motion after concluding that defendant was not stopped. Following a stipulated facts trial, the court convicted defendant of the charged offense. Defendant appeals, assigning error to the denial of her motion to suppress. We conclude that the record before us is insufficient to determine whether defendant was stopped. Although we conclude that a reasonable person in defendant's position could have believed that her liberty had been restrained, the trial court did not make findings as to defendant's subjective belief. We also conclude that, assuming that defendant was stopped, the stop was not lawful. Even if the police initially had reasonable suspicion to stop her, that suspicion was no longer reasonable by the time the police requested defendant's consent to search her backpack. Accordingly, we vacate the conviction and remand for further proceedings.

We take the pertinent facts from the trial court's findings and from the record of the suppression hearing, which we view in the light most favorable to the state. Officer Heinen of the Toledo Police Department was parked in his patrol car outside a trailer park at 1:15 a.m. Heinen saw defendant in the parking lot of the trailer park. He knew defendant from prior contacts with her and knew that she associated with people involved in methamphetamine trafficking. According to Heinen, the trailer park is in a part of town that was "known to have high drug traffic." Heinen saw defendant approach a man, Brian Payne, in front of Payne's trailer. Heinen knew Payne to be a drug dealer. Defendant and Payne reached toward each other with their hands and spoke briefly, and then defendant walked away. The contact between them lasted 10 to 20 seconds.

During the contact with Payne, defendant had her back to Heinen and was standing between him and Payne, so

Heinen did not actually see their hands touch or see them exchange anything. Nevertheless, he suspected that he had just observed a drug transaction. He drove into the trailer park and stopped behind defendant, who was walking away from him. Defendant had been out of Heinen's sight for about five seconds as he drove in. Deputy Alexander of the Lincoln County Sheriff's Department drove in behind Heinen in another patrol car.[1] Neither officer used his siren or turned on his overhead lights. Heinen, who was in uniform, got out of his patrol car, walked toward defendant, and said in a normal tone of voice, "Shari, can I talk to you for a minute?" He was 10 to 20 feet from her. Defendant turned around, said, "Sure," and walked up to him.[2] Alexander, who was also in uniform, got out of his patrol car and stood nearby, but he did not speak to or otherwise interact with defendant. Heinen asked defendant where she was coming from. She told him that she had been at Payne's house to use his telephone, which was inconsistent with what Heinen had seen. He asked her if she had anything illegal on her person. She said, "No," and he asked if he could check. Defendant said, "Sure, I don't have anything." Heinen patted her down and did not find anything. He then asked if he could look in her backpack. She said, "Fine. Knock yourself out." Before opening the backpack, he asked whether there was anything sharp in it that could hurt him. She told him that there were hypodermic needles in the backpack. Heinen looked and, indeed, found several hypodermic needles. He also found a container with six plastic baggies in it, one of which contained methamphetamine.

Defendant was arrested and charged with possession of a controlled substance. Before trial, she moved to suppress

---

[1] It is not clear from the record precisely when Alexander arrived at the scene. Heinen testified that Alexander had been parked alongside him outside the trailer park and followed him into the park after Heinen saw the contact between defendant and Payne. Alexander testified that, in his recollection, he came to the scene in response to a call for backup and that Heinen was already conversing with defendant when he arrived. The difference in their testimony is immaterial, however. The only fact concerning Alexander that is material to our analysis is that he was present when defendant consented to the search of her backpack. Both officers testified that he was present at that point.

[2] Defendant contends that she had to walk 30 feet to speak with Heinen. Viewed in the light most favorable to the state, the record indicates that the distance between them when she turned around was only 10 to 20 feet.

evidence obtained during her encounter with Heinen and Alexander. Two hearings before different judges were ultimately held on the motion. At the first hearing, before Judge Littlehales, only Heinen testified. The judge denied the motion in a written order. He concluded that Heinen's observation of the contact between defendant and Payne did not give rise to reasonable suspicion of drug activity. However, he ruled that the totality of the circumstances did not amount to a stop because defendant was free to walk away at any time before Heinen found the methamphetamine in her backpack. He also concluded that defendant had voluntarily consented to both the patdown and the search of her backpack.

After the court issued the written order, defendant obtained new counsel and filed a motion to reconsider the motion to suppress, asserting that her first attorney had not honored her request to testify at the suppression hearing. The court agreed to hear the motion again.

At the second hearing, before Judge Barber, Heinen again testified for the state. Defendant testified in her own behalf and also called Alexander and one other witness to testify. Among other things, defendant testified that the overhead lights on Alexander's patrol car were on during her encounter with the officers. She also testified that she did not feel free to leave when Heinen asked her to talk to him, in part because Alexander's overhead lights were on and in part because, in her experience with police officers, "when they ask you to come talk to them and you don't and you turn around and walk off and just ignore them, um, then, you know, you pretty much get yourself in more trouble." When testifying about the search of the backpack, defendant stated, "I didn't believe that I had anything illegal on me. So I let him search the backpack." However, her counsel then asked her whether she believed that she could refuse consent to search the backpack, and defendant said that she did not, explaining, "I felt very intimidated. I felt like it was definitely a stop. And I have learned with my experiences with officers you should cooperate (inaudible) if you don't want any more problems."

At the conclusion of the hearing, Judge Barber adopted the findings in Judge Littlehales's written order and

again denied the motion to suppress. He added that he considered defendant's "lack of credibility" in making his findings. After a stipulated facts trial, defendant was convicted of the charged offense. This appeal followed.

Defendant assigns error to the denial of her motion to suppress. She argues that Heinen stopped her when he requested that she change direction and walk over to speak to him, and that he then escalated the intrusiveness of the encounter with increasing displays of police authority. Specifically, she points to the facts that Heinen (1) immediately questioned her about whether she possessed anything illegal, thereby conveying that she was under investigation, and (2) asked her consent for, and then performed, a patdown search of her person, indicating that he did not believe her denial of having anything illegal. Defendant argues that the stop was illegal because Heinen lacked reasonable suspicion when he asked permission to search her backpack. Finally, she contends that her consent to the search of her backpack was a product of the illegal stop because, but for the stop, Heinen would not have been in a position to request her consent and she would not have made incriminating statements.[3]

The state responds that defendant's encounter with the officers was not a stop. Even if it was, the state contends, it was justified by reasonable suspicion and, moreover, defendant's consent to the search of her backpack was not a product of the stop.

■ ■ Because defendant seeks to suppress evidence obtained as a result of the search of her backpack, the pertinent inquiry is whether she was stopped when Heinen asked her to consent to that search. Thus, we need not determine whether the encounter was a stop from the outset. Accordingly, we begin by determining whether defendant was stopped when Heinen requested her consent to search her backpack. Under Article I, section 9, of the Oregon Constitution, a stop occurs when (a) "a law enforcement officer intentionally and significantly restricts, interferes with, or otherwise

---

[3] Defendant does not challenge the trial court's conclusion that her consent to the search was voluntary.

deprives an individual of that individual's liberty or freedom of movement; or (b) whenever an individual believes that (a), above, has occurred and such belief is objectively reasonable in the circumstances." *State v. Holmes*, 311 Or 400, 409-10, 813 P2d 28 (1991). The determination of whether a person has been stopped under Article I, section 9, and, if so, at what point in the encounter, requires a fact-specific inquiry into the totality of the circumstances. *Id.* at 408.

The record does not indicate that a *Holmes* type (a) stop occurred. Nothing suggests that Heinen intentionally restricted defendant's liberty of movement. Accordingly, we consider whether a type (b) stop occurred.

> "As we explained in *State v. Parker*, 225 Or App 610, 614-15, 202 P3d 205, *adh'd to as modified on recons*, 227 Or App 413, 206 P3d 259 (2009), a *Holmes* type (b) inquiry implicates both subjective and objective components—that is, whether the defendant subjectively believed that he or she was significantly restrained and, if so, whether that belief was objectively reasonable. As the party bearing the burden of demonstrating the lawfulness of the search, the state can prevail against a *Holmes* type (b) based motion to suppress if it disproves either of those conjunctive components. That is, the state can prevail by proving either (1) that the defendant did not believe that the officer had significantly restrained or interfered with the defendant's freedom of movement, or (2) that such a belief would not be objectively reasonable. [*State v.*] *Ashbaugh*, 225 Or App [16, 24, 200 P3d 149 (2008), *rev allowed*, 346 Or 257 (2009)]. In assessing whether 'such a belief is objectively reasonable under the circumstances,' the operative inquiry is whether 'a reasonable person in defendant's position could have believed that the officers significantly had restricted [her] liberty or freedom of movement.' *Id.* at 25 (internal quotation marks and emphasis omitted; brackets in original)."

*State v. Lantzsch*, 229 Or App 505, 515, 214 P3d 22 (2009). We begin with the objective component because, if the state were to prevail on that component, that would obviate the need for a remand.

■■ "A consensual police-citizen encounter can become a stop if the encounter causes a person reasonably to believe that he is the subject of a criminal investigation and, for that

reason, his liberty of movement has been significantly restricted." *State v. Zamora-Martinez*, 229 Or App 397, 401, 221 P3d 349 (2009). At the point when Heinen asked defendant whether he could search her backpack, defendant was in the presence of two armed, uniformed police officers who had approached her in separate patrol cars at 1:15 in the morning. One of the officers, Heinen, after asking to speak with her, asked where she had come from and then immediately asked whether she had anything illegal in her possession. When she denied having anything, he asked whether he could search her person and then, when she consented, proceeded to pat her down, finding nothing. Under those circumstances, a reasonable person could infer from Heinen's subsequent request to search defendant's backpack that he did not accept defendant's denial of possessing anything illegal, wanted to investigate further, and would not allow her to walk away. *Cf. State v. Ashbaugh*, 225 Or App 16, 28, 200 P3d 149 (2008), *rev allowed*, 346 Or 257 (2009) ("[A] person who knows that he or she is being investigated by a police officer during an encounter could reasonably believe that, for that reason, his or her freedom of movement has been restrained.").

The trial court did not make any express findings as to whether defendant subjectively believed that she was not free to leave. Given the court's conclusion that the "totality of the circumstances" did not amount to a stop, the court appears to have based its ruling on the objective component of the *Holmes* type (b) analysis. It follows that we must remand for findings as to defendant's subjective belief unless, as the state argues, (1) the stop—assuming there was one— was justified by reasonable suspicion or (2) defendant's consent was not a product of the stop.[4] Accordingly, we consider those issues, beginning with the question of reasonable suspicion.

■    To justify a stop, a police officer must subjectively believe that the person stopped has committed a crime, and that belief must be objectively reasonable under the totality

_____

[4] From here forward, we refer to defendant's encounter with the police as a "stop" as convenient shorthand, with the recognition that it remains undetermined whether defendant was actually seized for purposes of Article I, section 9.

of the circumstances. *State v. Kusaj*, 174 Or App 575, 578, 28 P3d 1182 (2001), *rev den*, 333 Or 400 (2002). The state argues that it is apparent from Heinen's testimony that he subjectively believed that he had observed a drug transaction. In the state's view, that belief was objectively reasonable. The state notes that Heinen saw what appeared to be a hand-to-hand exchange between defendant and a known drug dealer at 1:15 in the morning in an area known for illegal drug activity and that, when he asked defendant where she had come from, she told him something that was inconsistent with what he had just seen.

■ Defendant argues that the trial court's conclusion that Heinen lacked reasonable suspicion included an implicit finding that he did not subjectively believe that defendant had engaged in illegal activity. We need not resolve that issue. Even assuming that Heinen initially reasonably suspected that defendant had engaged in illegal activity, based on her conduct and the surrounding circumstances, that reasonable suspicion evaporated when he patted her down and found nothing. Nothing in the record indicates that defendant put anything in her backpack after the contact with Payne. Heinen testified that she was out of his view for only about five seconds, and nothing in his testimony suggests that she might have placed anything in the backpack during that time. Thus, once the patdown of defendant's person revealed nothing, Heinen no longer had reason to believe that Payne had handed her illegal drugs. It follows that he lacked reasonable suspicion to detain defendant when she consented to the search of the backpack.

We turn finally to the state's argument that defendant's consent was not a product of the illegal stop. Citing *State v. Hall*, 339 Or 7, 115 P3d 908 (2005), the state argues that the stop did not significantly affect defendant's decision to consent to the search. It notes that, when Heinen asked defendant if he could search her backpack, she told him, "Knock yourself out," and that, when she was asked at the suppression hearing why she had allowed Heinen to search the backpack, she replied, "Because I didn't believe that I had anything illegal on me." According to the state, it was that belief, rather than the stop, that led her to consent. Thus, the

state argues, under *Hall*, her consent could not have derived from the stop.

■ The inquiry into whether a defendant's decision to consent to a search was affected by prior police illegality is driven by the underlying facts. *See id.* at 35 (describing the inquiry as "fact-specific" and requiring "examination of the specific facts at issue"). Because the trial court concluded that defendant was not stopped, it did not reach the issue of the causal connection between the stop and defendant's consent, and it did not resolve issues of fact that are material to that inquiry. For example, the court did not make an express finding as to whether defendant actually believed that she did not have anything illegal in her possession. Nor is such a finding implied by the court's rulings that defendant was not stopped and that her consent was voluntary, so we do not presume that the court made that finding implicitly. It follows that we cannot affirm on the ground that defendant's decision to consent was not significantly affected by the stop.[5]

Vacated and remanded.

---

[5] We express no opinion as to whether findings in the state's favor on the underlying factual issues would support the conclusion that the stop did not significantly affect defendant's decision to consent.