Argued and submitted April 28, 2016, reversed and remanded March 29, 2017

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

COLBY RAY TAPP,
*Defendant-Appellant.*

Harney County Circuit Court
130280CR2; A157547

393 P3d 262

Brett J. Allin, Deputy Public Defender, argued the cause for appellant. With him on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

David B. Thompson, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Paul L. Smith, Deputy Solicitor General.

Before Ortega, Presiding Judge, and Lagesen, Judge, and Garrett, Judge.

## LAGESEN, J.

Defendant appeals a judgment of conviction for one count of unlawful delivery of marijuana for consideration, ORS 475.860, and one count of unlawful possession of marijuana, ORS 475.864. The state obtained the evidence against defendant, which includes both physical evidence and statements, after Oregon State Police Sergeant Williams stopped defendant for a traffic violation and then, during the course of that stop, began investigating defendant for suspected involvement in drug trafficking. Defendant moved to suppress that evidence on the ground that Williams unlawfully extended the traffic stop when he began investigating defendant for drug trafficking and that, as a result, Article I, section 9, requires suppression of all evidence obtained after that point. The trial court denied the motion, concluding that, although Williams extended the traffic stop, he did so lawfully because, at the time, he had reasonable suspicion that defendant was engaged in drug trafficking. On appeal, defendant assigns error to the trial court's denial of the motion to suppress. As framed by the parties, the question before us is whether the trial court erred in determining that Williams had reasonable suspicion that defendant was engaged in drug trafficking at the time that he extended the traffic stop. We conclude that the court erred and, accordingly, reverse and remand.

Our review of a trial court's denial of a motion to suppress is for legal error. *State v. Maciel-Figueroa*, 361 Or 163, 165-66, 389 P3d 1121 (2017). In conducting that review, "we are bound by the trial court's factual findings if there is any constitutionally sufficient evidence to support them." *Id.* To the extent that the trial court did not make express factual findings, we presume that the court found the facts in a manner consistent with its ultimate determination, provided that the evidence would support such findings.

The facts pertinent to the issue on review are not disputed. Defendant was driving eastbound on U.S. Highway 20 in Harney County at around 9:30 in the morning. His friend, Peterson, was riding in the car with him

and his mother, Sandra,[1] was driving behind them. While on patrol, Williams observed the two cars and thought that Sandra was following defendant's car too closely. He was going to pull Sandra over for that reason, when Sandra started weaving in her lane, at times crossing over the fog line on the right side of the lane.

Williams concluded that Sandra was weaving deliberately, and not because she was impaired. Williams thought that Sandra was weaving either to alert defendant to Williams's presence, or to "bait" Williams into stopping her. Unrelated to this encounter, Williams had heard about baiting from other officers. Those officers had indicated that such activity may occur when multiple vehicles involved in narcotics trafficking travel together. Sometimes, one vehicle will "bait" law enforcement by committing traffic violations so that law enforcement will stop that vehicle, permitting the other vehicle to continue traveling. At the time of this encounter, however, Williams had not seen such activity himself nor received training on any such activity.

Sandra's deliberate weaving, which might have been baiting activity, caused Williams to suspect criminal activity, although not narcotics trafficking specifically. Based on that suspicion, Williams decided that he wanted to stop the two cars to investigate further, but did not want to act alone and requested that Senior Trooper Johnson assist him in stopping both cars. Johnson was about 10 miles away and, while waiting for him to catch up, Williams continued to follow defendant and his mother, observing them for another 17 to 20 minutes over the course of 13 miles. Eventually, Williams passed Sandra and pulled in front of her so that he was driving between defendant and Sandra, which is where he was when Johnson caught up to them. Johnson stayed behind Sandra and although he observed her cross over the fog line, he did not observe any baiting activity. When defendant made a lane change without signaling, Williams alerted Johnson that he would be stopping defendant for that violation, and that Johnson should stop Sandra at the same time.

---

[1] Because defendant's mother shares her last name with defendant, we refer to her only as Sandra to avoid confusion.

After stopping the two cars, Williams spoke with defendant and Peterson while Johnson spoke with Sandra. Williams observed that defendant's car was messy, smelled strongly of cigarettes, and was littered with trash and energy drinks. Williams asked defendant whether the car being driven by Sandra was traveling with them, and defendant responded that it was and it was being driven by his mother. Defendant explained that they were traveling from Klamath Falls, where they had been staying with defendant's brother-in-law.

Williams told defendant that he thought that Sandra was trying to "bait [Williams] into stopping her." Defendant appeared nervous, he avoided making eye contact, and his face was flushing. When Williams asked defendant about his nervousness, Peterson interjected and explained that defendant was nervous because his license was suspended. Williams then asked for their identification. Defendant provided an identification card and confirmed that his license was suspended. Peterson provided a "tattered and unreadable" paper license. Peterson also explained that he had been driving most of the way, but that defendant had taken over driving when Peterson grew tired. Williams did not smell any "burned or unburned" marijuana.

Williams continued to suspect criminal activity, told defendant and Peterson that he thought the two were transporting marijuana, and asked defendant for written consent to search the vehicle. From that point on, Williams pursued the investigation of defendant's involvement in drug trafficking. Ultimately, defendant admitted that there was marijuana in Sandra's car and that it belonged to him. Officers searched Sandra's car and found two duffel bags containing more than 60 pounds of marijuana. Later, after defendant, Peterson, and Sandra were arrested, Peterson told officers that they had traveled to California to purchase the marijuana.

Before trial, defendant moved to suppress all evidence obtained after Williams told defendant and Peterson that he suspected them of marijuana trafficking.[2] He

---

[2] Some of that evidence was discovered in defendant's mother's car, and some of that evidence consists of statements by Peterson. Defendant's standing to seek

contended that, by so doing, Williams unlawfully extended the stop because Williams did not have reasonable suspicion that defendant was involved in drug trafficking at the time and that Article I, section 9, therefore, required suppression of all evidence discovered after Williams unlawfully extended the stop. *See State v. Farrar*, 252 Or App 256, 260, 287 P3d 1124 (2012) (Article I, section 9, prohibits an officer from extending a stop by questioning a person about matters unrelated to the stop without reasonable suspicion). The trial court denied the motion, concluding that Williams did have reasonable suspicion to investigate defendant for drug trafficking at the time he extended the stop. Following a bench trial—at which defendant's mother testified that the marijuana belonged to her and not defendant—the trial court found defendant guilty of delivery of marijuana for consideration and possession of marijuana. Defendant appeals.

On appeal, defendant assigns error to the trial court's denial of his motion to suppress. He contends that the trial court erred when it concluded that Williams had reasonable suspicion that defendant was engaged in drug trafficking at the time that he extended the stop. We agree with defendant.

For purposes of Article I, section 9, an officer has reasonable suspicion to stop, or extend the stop of, a suspect for investigatory purposes if the officer "actually suspect[s] that the stopped person had committed a specific crime or type of crime, or was about to commit a specific crime or type of crime," and if that officer's "subjective belief *** was objectively reasonable under the totality of the circumstances existing at the time of the stop." *Maciel-Figueroa*, 361 Or at 182. Thus, the question is whether Williams subjectively believed that defendant may have committed a specific crime or type of crime at the time that Williams extended the stop and, if so, whether that belief was objectively reasonable under the totality of the circumstances.

As to the first point, although Williams's subjective belief is not the focus of the parties' arguments on appeal,

suppression of the evidence obtained from Peterson and his mother's vehicle has not been disputed in this matter.

we note that his testimony suggests that he did *not* suspect defendant of a *specific* crime or type of crime at the time that he extended the stop, as required under *Maciel-Figueroa*. When asked on several occasions whether he suspected defendant of drug trafficking, Williams clarified each time that he suspected that defendant was involved in criminal activity generally. Williams said that he thought that the criminal activity likely would turn out to be some kind of narcotics trafficking because that is what he had "primarily seen in the area," but acknowledged that, at the time that he started asking defendant about drug activity, his suspicion was of "criminal activity." Given that testimony from Williams about what he believed at the time, it is questionable whether Williams had a subjective belief that defendant might be involved in drug trafficking—as distinct from criminal activity generally—when he extended the stop.

As to the second point, even if we assume that Williams had the requisite subjective belief regarding defendant's involvement in the specific offense of drug trafficking, that belief was not objectively reasonable under the totality of the circumstances. At the time that Williams extended the stop, nothing that he knew made it objectively reasonable to believe that defendant might have been trafficking in drugs. All that Williams knew was that defendant was driving on a suspended license on an interstate highway in a messy car with his mother driving behind him, that defendant was nervous to talk to him, and that defendant's mother appeared to deliberately weave her car when Williams first started following them, which might have been an effort to alert defendant to Williams's presence (perhaps so defendant would be mindful of the traffic laws) or might have been the type of baiting activity that Williams had heard about from other officers. None of that information, without more, made it objectively reasonable to think that defendant might have been trafficking drugs (which could be why Williams kept clarifying that his suspicion was of "criminal activity," not drug trafficking). Although Williams characterized Highway 20 as a "drug trafficking corridor," there is no indication that that interstate highway has fallen so out of favor with travelers

not trafficking in drugs that it would be reasonable to infer that a person is a drug trafficker simply from his use of the highway. And, as defendant points out, we routinely have concluded that officers lacked reasonable suspicion to investigate for drug crimes in very similar circumstances. *See, e.g., State v. Maciel,* 254 Or App 530, 295 P3d 145 (2013) (concluding that the officer lacked reasonable suspicion of drug activity when a vehicle with California license plates was traveling north on I-5 at 4:00 a.m. with third-party registration, inconsistent stories about car ownership, prepaid cell phones, religious medallion on the rearview mirror, and lack of visible luggage); *State v. Meza-Garcia,* 256 Or App 798, 303 P3d 975 (2013) (holding that factors, including (1) a vehicle traveling interstate; (2) the presence of two cell phones and occupants; (3) the strong odor of air freshener; (4) the defendant's nervousness; (5) the absence of luggage; and (6) third-party registration of the vehicle were insufficient to establish reasonable suspicion that defendant was engaged in drug-related activity criminal activity).

In arguing for a contrary conclusion, the state relies heavily on Williams's observation of the possible "baiting" activity by Sandra, contending that that activity made it objectively reasonable for Williams to suspect that defendant was engaged in drug trafficking. But, under the circumstances here, the alleged baiting activity cannot bear the weight in the reasonable-suspicion calculus that the state would have us place on it. First, Williams admitted that he did not know if Sandra was engaged in baiting activity; he only thought she might be. He acknowledged that it looked like Sandra might just be trying to make defendant aware of Williams's presence, an action which Williams did not associate with drug trafficking specifically. He also acknowledged that baiting activity was not something he knew about from his own training and experience, rather it was something that he had heard about from other officers unrelated to this encounter. This further weakens the weight that Sandra's driving activity can bear in supporting an objectively reasonable belief that defendant might have been engaged in drug trafficking because it speaks only to a generalized understanding of baiting activity by Williams, thus calling into question whether—from

an objective standpoint—Sandra's driving activity actually resembled the baiting activity of which Williams had heard his colleagues speak. In other words, it is questionable whether Sandra's driving bore an objective resemblance to baiting activity at all and, for that reason, does not tend to demonstrate that Williams's belief that defendant may have been drug trafficking was objectively reasonable. *State v. Miglavs*, 337 Or 1, 90 P3d 607 (2004) (differentiating between weight given to "generalized or stereotypical information" and information derived from "specific training" and "recent personal experience"); *State v. Valdez*, 277 Or 621, 628, 561 P2d 1006 (1977) (noting that in the absence of any very remarkable activity, a police officer's instinct and experience cannot, by itself, support reasonable suspicion); *State v. Pope*, 150 Or App 457, 946 P2d 1157 (1997), *rev den*, 327 Or 521 (1998) (explaining that the officer's belief that the defendant was in a gang and knowledge of behavior he knew to be associated with motorcycle gangs through training and experience was insufficient to give rise to reasonable suspicion until bolstered by the officer's observation of the defendant's "unusual and disconcerting" behavior).

Second, after observing the alleged baiting activity, Williams followed defendant and his mother for nearly 20 minutes before initiating the stop. There is no indication that Sandra engaged in additional baiting activity during that time, which would tend to suggest that Sandra was not intending to bait Williams, but had simply been making defendant aware of Williams's presence. In other words, the passage of time diminished the reasonableness of the inference that Sandra had been engaged in baiting activity, which in turn, diminishes the weight that activity can be afforded in assessing whether Williams had reasonable suspicion of drug trafficking. *See State v. Lovell*, 233 Or App 381, 389, 226 P3d 76 (2010) (explaining that even if an officer "initially reasonably suspected that defendant had engaged in illegal activity, based on her conduct and the surrounding circumstances, that reasonable suspicion evaporated when he patted her down and found nothing"). As a result, on this record, Sandra's possible baiting activity does not make it objectively reasonable to think that defendant may have been involved in drug trafficking.

In sum, the trial court erred in concluding that Williams had reasonable suspicion to extend the stop. Consequently, the trial court erred in denying defendant's motion to suppress.[3] That error was not harmless because it is evident that the evidence that the court declined to suppress affected the trial court's decision to convict defendant. We therefore reverse and remand.

Reversed and remanded.

---

[3] The state has not argued attenuation with respect to any of the evidence obtained after Williams unlawfully extended the stop. Because the state bears the burden of proving attenuation, in the absence of any such argument our case law dictates that suppression is required. *See State v. Kimmons*, 271 Or App 592, 602, 352 P3d 68 (2015) (concluding that suppression was required to remedy violation of Article I, section 9, where, on appeal, "the state offer[ed] no reasoned explanation—or, indeed, any explanation at all—as to why, in the totality of the circumstances of this case, suppression is not required").