Argued and submitted March 26, 2019, reversed and remanded April 22, 2020

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## JASON LEIGH SHERRIFF,
*Defendant-Appellant.*

### Washington County Circuit Court
### 17CR20470; A165345

465 P3d 288

Defendant was driving in a car with his friend, Mitchell, when he was pulled over and arrested on an outstanding warrant. Mitchell was going to drive the car away, but, before she could do so, a deputy cited her for a cracked windshield while another deputy walked a drug-sniffing dog around the car. The dog alerted, leading the police to find methamphetamine and a gun in defendant's backpack in the back seat of the car. When the police asked defendant about the gun and drugs, defendant disclaimed any ownership of the contents of the car. At trial, defendant moved to suppress the gun and drugs. The trial court denied his motion, reasoning that defendant abandoned his constitutionally protected possessory interest in the car and its contents when he disclaimed his connection to the contents of the car. Defendant was convicted of commercial drug offenses and one count of felon in possession of a firearm. On appeal, he contends, among other things, that the officers unlawfully seized the car and its contents and that that unlawful seizure came before any disclaimer of his possessory interest in the car and its contents. *Held*: The trial court erred in denying defendant's motion to suppress. The dog sniff resulted in a warrantless seizure of the car. Because there was no plausible basis for concluding that the K-9 investigation was reasonably related to Mitchell's citation, and because the state did not demonstrate that any other exception to the warrant requirement applied, the seizure of the car violated Article I, section 9, of the Oregon Constitution. *See State v. Arreola-Botello*, 365 Or 695, 712-13, 451 P3d 939 (2019).

Reversed and remanded.

Oscar Garcia, Judge.

Rond Chananudech, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Jennifer S. Lloyd, Assistant Attorney General, argued the cause for respondent. Also on the briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Lagesen, Presiding Judge, and DeVore, Judge, and James, Judge.

LAGESEN, P. J.

Reversed and remanded.

**LAGESEN, P. J.**

Defendant appeals a judgment of conviction for one count of delivery of methamphetamine—commercial drug offense, ORS 475.890(2); one count of possession of methamphetamine—commercial drug offense, ORS 475.894; and one count of felon in possession of a firearm, ORS 166.270(1). Officers found the drugs and gun in defendant's backpack after they searched the car in which defendant and his friend, Mitchell, had been riding at the time of defendant's arrest on an outstanding warrant. Defendant assigns error to (1) the trial court's denial of his motion to suppress evidence of the drugs and gun; (2) the trial court's pretrial ruling that, if defendant introduced certain statements by Mitchell implicating herself in the drug crimes, then, under OEC 403 and the so-called "rule of completeness," the state would be permitted to introduce Mitchell's statements implicating both defendant and herself; and (3) the trial court's instruction to the jury that it could return a guilty verdict upon the agreement of at least 10 jurors. We conclude that the trial court erred in denying the motion to suppress and therefore reverse and remand. That conclusion obviates the need for us to address defendant's other assignments of error because those issues may be litigated differently on remand.

Our review of the trial court's denial of a defendant's motion to suppress is, in general, "for legal error, accepting the facts as found by the trial court, so long as there is constitutionally sufficient evidence in the record to support the findings." *State v. Jones*, 286 Or App 562, 564, 401 P3d 271 (2017).

This case adds a wrinkle to our standard of our review. The manner in which the trial court resolved the motion to suppress meant that the court did not need to make, and did not in fact make, factual findings pertinent to certain issues raised by the motion to suppress and the parties' arguments on appeal. We therefore cannot presume that the court made a particular factual finding, to the extent that particular finding was not one that was necessary to the court's decision. *Pereida-Alba v. Coursey*, 356 Or 654, 670-72, 342 P3d 70 (2015).

In those instances—where the court did not make certain findings and we must determine whether a remand is in order for the court to make those findings—we view the record in the light most favorable to the state and articulate the facts in accordance with that favorable view. We take that approach to evaluate whether applicable constitutional standards would require the granting of defendant's motion to suppress even if all yet-unresolved conflicts in the evidence were to be resolved in the state's favor. If so, then defendant would be entitled to have the motion to suppress granted, notwithstanding the trial court's failure to reach all potentially dispositive factual issues. *See id.* (explaining that a remand to address unresolved material factual disputes is not necessary if the party with the burden of production did not meet that burden). If not, then any error by the trial court would require a remand to address the factual issues that necessarily must be resolved to dispose of the motion to suppress. *Id.*

Keeping those standards in mind, the historical and procedural facts relevant to defendant's challenge to the denial of his motion to suppress are as follows.

Deputy Maller was on the job with his K-9 partner, Taz. They received a call from then-Deputy (now Corporal) Davis that defendant had gotten into a 1994 Honda Accord with Washington plates and driven away. Maller was familiar with defendant and knew he had a warrant out for his arrest on a misdemeanor. So Maller tracked down the car, radioed the Hillsboro Police Department for assistance, and pulled defendant over into a church parking lot after Officer Duggan of the Hillsboro Police Department fell in behind him.

At the time of the stop, defendant was in the driver's seat and Mitchell was in the passenger seat. Maller took the driver's side of the car, while Duggan took the passenger side. The windshield had a horizontal crack through the driver's line of vision that extended the length of the windshield, and Maller initially told defendant that he was stopping him because of the crack and did not mention the warrant. After defendant provided Maller with his name (defendant did not have a license), insurance information,

and the registration for the car, Maller went to his patrol car and confirmed what he already knew: Defendant had an active warrant. Maller then returned to the Honda and told defendant that there was a warrant for his arrest.

Defendant uttered a sequence of profanities and requested permission to finish his cigarette. Maller said, "Absolutely." While defendant finished his cigarette, he and Mitchell talked. When he was done with the cigarette, he asked Maller if he could kiss Mitchell goodbye. Maller again said, "Absolutely." Defendant kissed Mitchell and stepped out of the car. Maller handcuffed him, patted him down, and led him to his patrol car.

While Maller was leading defendant away, Mitchell jumped out of the passenger side, ran around the car, and got into the driver's seat. Maller placed defendant in his patrol car and went back to the driver's side of the Honda. By that time, Mitchell had taken off the emergency brake so that she could leave, and she told Maller that it was her car and she would take it. Maller asked if she would consent to having him walk his narcotics detection canine around the car. Mitchell did not consent, telling Maller, "No, I have to leave, I have to leave, I have to leave."

Maller did not want Mitchell to drive away, so he directed Duggan to start writing up a citation based on the crack in the windshield. While Duggan was doing that, Maller got Taz and began circling the Honda. Taz alerted at the driver's door seam. Maller asked Mitchell if there were narcotics in the car, but Mitchell did not respond. Maller directed Mitchell to step out of the car. She did not comply at first, but eventually did after he opened the door.

After Mitchell got out of the car, Maller pulled her purse from the car, searched it, and found methamphetamine and a scale, for which he arrested her. After *Mirandizing* her, Maller put her in Duggan's patrol car and then *Mirandized* defendant. Defendant confirmed that he understood his rights, and Maller asked him about the methamphetamine in the car. Defendant replied, "I don't know anything about it. There's nothing in the car that's mine. I don't know what you're talking about, sir."

By that point, Davis had shown up. Together, Davis and Maller searched the Honda. In addition to the drugs and scale, they found roughly $1,133 in Mitchell's purse. Davis searched a grey backpack in the backseat and found about 3.5 ounces of methamphetamine and a 9mm handgun and ammunition. He then went to ask defendant about it. Defendant told Davis that he "didn't know about any of the contents inside the vehicle, to include the gun and the methamphetamine, that he [had] no knowledge of any of it."

Mitchell supplied a different perspective. She stated that she was dealing methamphetamine for defendant and that some of the profits were hers. The rest of the profits, however, belonged to defendant, as did the backpack and its contents. Mitchell explained that defendant had picked up a half pound of methamphetamine the day before, and that the two of them had divided it among baggies, making it likely that both her fingerprints and his fingerprints would be all over the baggies. Mitchell related that she did not know about the gun or any other contents of the backpack except for the methamphetamine.

Maller and Duggan transported Mitchell and defendant to jail.

Defendant was charged with one count of delivery of methamphetamine—commercial drug offense, ORS 475.890(2); one count of possession of methamphetamine—commercial drug offense, ORS 475.894; and one count of felon in possession of a firearm, ORS 166.270(1). Before trial, he moved to suppress the evidence obtained during the search of the car. He argued that the state obtained that evidence in violation of his rights under Article I, section 9, of the Oregon Constitution. In particular, he contended that he had a constitutionally protected possessory interest in the car and its contents that police unlawfully interfered with when they, in defendant's view, unlawfully extended the stop of the car by writing Mitchell a citation for the cracked windshield. Defendant pointed out that, under our case law, the cracked windshield was not a basis for citing Mitchell. In response, the state argued that the court need not address whether the extended detention of Mitchell and the car was permissible because, in its view, defendant abandoned any

interest that he had in the car and its contents when he disclaimed any connection to the contents of the car. For that proposition, the state relied on *State v. Standish*, 197 Or App 96, 104 P3d 624, *rev dismissed as improvidently allowed*, 339 Or 450 (2005).

The trial court agreed with the state. It concluded that, under *Standish*, defendant abandoned his constitutionally protected possessory interest in the car and its contents when he disclaimed his connection to the contents of the car. That, in the court's view, was dispositive and obviated the need for the court to address any other issue.

On appeal, defendant challenges that conclusion. He argues, among other things, that the trial court erred in determining that its abandonment ruling was dispositive. Relying on *State v. Juarez-Godinez*, 326 Or 1, 942 P2d 772 (1997), he contends that officers unlawfully seized the car and its contents and that that unlawful seizure came before any disclaimer of his possessory interest in the car and its contents. He contends that that unlawful seizure requires the suppression of all evidence discovered in the car as a result of the search that ensued on the heels of the unlawful seizure.

In response, the state concedes that the trial court was "mistaken" in concluding that its abandonment ruling was dispositive of the motion to suppress. That is because defendant contended that the car was unlawfully seized before he disclaimed any interest in the car (and its contents). As a result, the state explains, the trial court needed to make additional determinations to resolve the motion to suppress:

> "If the car and its contents were lawfully seized—or not seized at all—defendant's possessory interests were not violated. If the car was unlawfully seized, the circuit court would have to determine whether defendant's disclaimer was the product of exploitation of that illegality. But because the court believed that defendant's abandonment of his privacy interest was dispositive, it did not reach those questions."

The state asserts that a remand is required because, in its view, answering those questions requires further factfinding.

In particular, the state argues that "the record supports competing inferences with respect to the timing of the officers' show of authority as to Mitchell (and, by extension, the car) and the grounds therefor," and a remand is required to resolve those competing issues.

Defendant replies that no remand is required. He contends that, one way or another, officers unlawfully seized the car when they prevented Mitchell from driving away, and the state failed to establish that its search of the vehicle was attenuated from the unlawful seizure. Although he acknowledges some conflicts in the evidence, he contends that none of them need be resolved because the only conclusion that the record allows for is that the unlawful seizure occurred before defendant disclaimed any interest in the contents of the car.

We agree with defendant. Although the state is correct that the trial court resolved neither factual nor legal issues pertaining to defendant's claim that the car was unconstitutionally seized, the record, viewed in the light most favorable to the state, allows for but one conclusion: The car was seized, unconstitutionally so. That means defendant is entitled to suppression of the evidence uncovered in the ensuing search of the car because the state did not attempt to demonstrate that the discovery of the evidence was sufficiently attenuated from any unconstitutional seizure so as to make the exclusionary rule inapplicable. *See State v. Tapp*, 284 Or App 583, 591 n 3, 393 P3d 262 (2017) ("Because the state bears the burden of proving attenuation, in the absence of any such argument [about attenuation] our case law dictates that suppression is required.").[1]

---

[1] One of the state's arguments on appeal suggests that a remand is required to allow it to demonstrate attenuation. The state argues that, in the event we determine that the car was unlawfully seized, that would require a remand to determine whether defendant's disclaimer of any interest was the product of the illegal seizure. But that is not an argument that the state raised below. Beyond that, the correct question would be whether the state established that defendant's disclaimer occurred *before* any unlawful seizure. *State v. Cook*, 332 Or 601, 608-09, 34 P3d 156 (2001) (the state bears the burden of proving that any alleged abandonment of a constitutionally protected interest occurred before a warrantless search and seizure). Here, the only conclusion that the record allows is that the unconstitutional seizure occurred before defendant made any disclaimers.

First, was the car seized? At the latest, officers seized the car when Taz started his sniff. *See Juarez-Godinez*, 326 Or at 6-8. When officers arrest the driver of a car, the driver retains a possessory interest in the car that, "in normal circumstances," permits the driver to transfer possession to a passenger (if there is one) and direct that the car be driven away. *Id.* at 7. If officers, through a show of authority, curtail the driver's ability to do so, they effectuate a seizure of the car. *Id.* For example, as defendant points out, in *Juarez-Godinez*, the Supreme Court majority considered circumstances similar to those here and concluded that an officer seized a car when, following the driver's arrest, he told the driver and passengers that another officer and a dog were coming to check out the car. *Id.* at 8. The dissent disagreed that a seizure occurred that early but agreed that a seizure had occurred—just not until the dog-sniff. *Id.* at 19 (Van Hoomisen, J., dissenting). In our view, *Juarez-Godinez* requires the conclusion that, at a minimum, Maller seized the car when he started circling it with Taz. When an officer and a dog start circling a car, it communicates that the driver is not free to drive away by making it difficult if not impossible for the driver to depart without injuring a person or a dog or both.

Second, did the seizure violate Article I, section 9? "[A] warrantless seizure is unconstitutional unless it is justified under one of a few carefully circumscribed exceptions to the warrant requirement." *Id.* at 8-9. Here, the seizure of the car was not backed by a warrant and it does not fall within any identified exception to the warrant requirement.

Below, the state's main argument as to why Taz's sniff was constitutional appears to have been that it occurred while the officers permissibly detained Mitchell for Duggan to write up the citation for the cracked windshield, and it did not otherwise extend that otherwise permissible detention of Mitchell.[2] Defendant's argument, which he reiterates on appeal, was that the detention of Mitchell was unlawful because our case law holds that a crack in the windshield,

---

[2] The state also argued that Mitchell was not seized at all. That argument is not one that was helpful to the state because it does nothing to explain why the seizure of *the car* effected by Taz's sniff would be constitutionally permissible.

like the one in the Honda's windshield, does not violate the vehicle code, meaning officers lacked probable cause to detain Mitchell to cite her. *See State v. Stookey*, 255 Or App 489, 496-500, 297 P3d 548 (2013) (officer lacked probable cause to stop vehicle for horizonal crack across windshield through driver's line of vision because such a crack is not a violation of the vehicle code). Therefore, Taz's sniff could not be justified on the basis that it occurred during the lawful detention of Mitchell for the purpose of writing the citation.

Under *Stookey*, it may have been impermissible for the officers to detain Mitchell for the purpose of writing her a citation for the cracked windshield. We need not resolve the point, however, in view of *State v. Arreola-Botello*, 365 Or 695, 451 P3d 939 (2019), which the Supreme Court decided after briefing was completed in this case. There, the Supreme Court held that, "for the purposes of Article I, section 9, all investigative activities, including investigative inquiries, conducted during a traffic stop are part of an ongoing seizure and are subject to both subject-matter and durational limitations." *Id*. at 712. That means that all such activities, including inquiries, must be reasonably related to the purpose of the traffic stop or supported by an independent constitutional justification. *Id*. at 712-13; *State v. Watson*, 353 Or 768, 778-82, 305 P3d 94 (2013).

Here, even if Mitchell was permissibly detained for the citation, the record gives no plausible basis for concluding that Taz's inspection had any reasonable relationship to citing her for a cracked windshield. Neither does it supply any basis for concluding that Maller had an independent constitutional basis for seizing the car to allow Taz to do his work (and the state, in any event, has at no point advanced one).[3] That means the seizure of the car violated Article I, section 9.

In sum, under *Juarez-Godinez*, the record compels the conclusion that Maller and Taz seized the Honda, and,

---

[3] Below, the state argued that the automobile exception allowed it to search the car and its contents once Taz's alert gave officers probable cause to believe that the car contained drugs. But the state did not argue, and could not argue, that the automobile exception allowed for Taz to inspect the car in the first instance.

further, that the state did not establish that that warrantless seizure fell within an exception to the warrant requirement. As noted, the state did not make a case for attenuation. Defendant therefore is entitled to suppression of the evidence discovered in the search of the car and its contents that followed on the heels of the unconstitutional seizure of the car. The trial court erred when it concluded otherwise, and, on this record, that error was not harmless.

Reversed and remanded.