GARRETT, J. pro tempore.
*560 Defendant appeals a judgment of conviction for possession of methamphetamine, ORS 475.894. In a single assignment of error, defendant challenges the trial court's denial of his motion to suppress evidence discovered during a traffic stop, arguing, among other things, that the officer's patdown of defendant that led to the discovery of the evidence was unlawful. For the reasons explained below, we agree with defendant and reverse.
We review a trial court's denial of a motion to suppress for legal error and are bound by the trial court's findings if they are supported by evidence in the record. State v. Parnell , 278 Or. App. 260, 261, 373 P.3d 1252 (2016) (citing State v. Regnier , 229 Or. App. 525, 527, 212 P.3d 1269 (2009) ). If the trial court did not make express findings of fact, we "presume that the facts were decided in a manner consistent with the trial court's ultimate findings." Id. We state the facts in accordance with that standard.
The relevant facts are undisputed and based on testimony presented at the hearing on defendant's motion to suppress and a recording of the traffic stop entered into the record. State Trooper Hargis initiated a traffic stop after witnessing a car cross the yellow center line of the road, a traffic violation. Hargis approached the car and immediately smelled alcohol and marijuana. He asked both the driver, Ramirez, and the passenger, defendant, "who has [an] open container?" Defendant admitted to drinking beer earlier and having a cup of beer in the center console, another traffic violation. Hargis asked for identification, registration, and proof of insurance from both individuals. Defendant provided a valid ID card; Ramirez did not provide any identification. Neither Ramirez nor defendant provided proof of vehicle insurance.
Hargis contacted dispatch to determine whether Ramirez had a valid driver's license and whether the car was insured. Hargis learned that Ramirez did have a driver's license but that it was suspended. Hargis continued making efforts to identify Ramirez and defendant; in the course of doing so, Hargis asked Ramirez to step out of the car and stand behind it, and Ramirez complied.
*561 Hargis then walked to the front passenger-side window of the car to talk to defendant. Hargis observed that defendant was "restless" and "fidgety." Hargis, who had training as a Drug Recognition Expert, believed from his training that defendant's demeanor indicated that he was under the influence of amphetamine. Defendant also appeared to be "guarding" something on his left side. Hargis asked if defendant had any *807 weapons. In response, defendant shook out his sweatshirt pocket and allowed Hargis to open the car door and search the area immediately around him. Hargis found no weapons or contraband. Hargis then asked defendant for permission to search the rest of the car and in response, defendant exited the car.
As defendant got out of the car, Hargis noticed bulges in defendant's pants and sweatshirt and believed that defendant might be carrying a weapon. Concerned for his safety, Hargis conducted a nonconsensual patdown search of defendant. In the course of the patdown, a methamphetamine pipe fell out of defendant's clothes and onto the ground. Defendant was arrested and charged with unlawful possession of methamphetamine.
Before trial, defendant moved to suppress the evidence discovered during the stop, arguing that neither the request to search the entire car nor the patdown of defendant were "reasonably related" to the traffic violation underlying the traffic stop, and that all evidence discovered after Hargis requested consent to search the entire car was required to be suppressed. See ORS 810.410(3)(b) (police officers may detain person for traffic violation for purposes of investigation reasonably related to the traffic violation, identification, and issuance of citation). The state argued, among other things, that Hargis's request to search the car and his patdown of defendant were justified by reasonable safety concerns. In support of those arguments, the state elicited testimony from Hargis about what Hargis observed and believed during the stop.
The trial court denied the motion to suppress, explaining in a letter opinion that Hargis's request to search the car was lawful and that Hargis's patdown search was justified by objectively reasonable officer-safety concerns.
*562 Defendant entered a conditional guilty plea and was convicted of unlawful possession of methamphetamine.
On appeal, defendant challenges the trial court's denial of his motion to suppress on various grounds, including that Hargis's nonconsensual patdown search of defendant was unlawful because it was not justified by objectively reasonable officer-safety concerns. The state responds that that argument is unpreserved and incorrect on the merits. As explained below, we conclude that defendant's argument was preserved and that, on this record, the state failed to carry its burden to show that the officer-safety exception to the warrant requirement applies.
Regarding preservation, although it is true that defendant did not make an officer-safety-related argument below, the state raised that issue to the trial court and elicited testimony from Hargis specifically to support the state's theory. The trial court also expressly ruled on the issue. The state does not contend that it had an inadequate opportunity to argue the officer-safety issue or that the record would have developed differently if defendant had disagreed with the state's officer-safety theory. Accordingly, we consider the purposes of the preservation requirement to have been served, notwithstanding defendant's silence on the issue below. See Peeples v. Lampert , 345 Or. 209, 219-20, 191 P.3d 637 (2008) (purposes of preservation requirement are to (1) apprise the trial court of a party's position such that it can consider and rule on it, (2) ensure fairness to the opposing party by avoiding surprise and allowing that party to address all issues raised, and (3) foster full development of the record); see also , e.g. , State v. Roberts , 291 Or. App. 124, 131, 418 P.3d 41 (2018) (issue preserved where it was clearly raised and ruled upon, the opposing party had an opportunity to be heard, and there is no reason to believe that the record would have developed materially differently).
We proceed to the merits. The "officer-safety" doctrine is a recognized exception to the general rule that warrantless searches are per se unreasonable in violation of Article I, section 9, of the Oregon Constitution. State v. Rudder , 347 Or. 14, 21, 217 P.3d 1064 (2009). The officer-safety exception permits an officer to
*563 "take reasonable steps to protect himself or others if, during the course of a lawful encounter with a citizen, the officer develops a reasonable suspicion, based on specific and articulable facts, that the citizen *808 might pose an immediate threat of serious physical injury to the officer or to others then present."
State v. Bates , 304 Or. 519, 524, 747 P.2d 991 (1987). For the exception to apply, the officer must have (1) acted during a lawful encounter, (2) had an objectively reasonable suspicion that the individual posed an immediate threat of serious physical injury, and (3) taken protective steps that were reasonable. State v. Rodriguez-Perez , 262 Or. App. 206, 212, 325 P.3d 39 (2014). Whether an officer's safety concerns were objectively reasonable is determined in light of the totality of the circumstances as they appeared to the officer at the time of the search, based on "facts specific to the particular person searched, not on intuition or a generalized fear that the person may pose a threat to the officer's safety." State v. Jackson , 190 Or. App. 194, 198-99, 78 P.3d 584 (2003), rev. den. , 337 Or. 182, 94 P.3d 877 (2004).
The parties do not dispute that Hargis was subjectively concerned for his safety. They dispute whether that belief was objectively reasonable. According to the state, Hargis's safety concerns were objectively reasonable based on the following facts: (1) defendant was agitated, restless, fidgeting, and made furtive movements; (2) defendant appeared to be under the influence of a stimulant or amphetamine; (3) Hargis had been trained as a Drug Recognition Expert for four years, and knew that people who use controlled substances often carry weapons and may be more likely to fight; (4) defendant was guarding his left side as if to hide something; and (5) defendant had bulges in his pockets, including his pants pocket, which Hargis noticed for the first time when defendant stepped out of the vehicle.
The evidence cited by the state is legally insufficient to support an objectively reasonable fear that defendant posed an immediate threat of serious physical injury. The facts of this case closely resemble those in State v. Davis , 282 Or. App. 660, 385 P.3d 1253 (2016), in which we concluded that the officer's patdown search of the defendant *564 was unlawful. In Davis , the defendant made furtive movements inside his vehicle as the officer approached; the defendant was extremely fidgety and had bloodshot eyes, which the officer believed were signs of recent drug use; the defendant was extremely nervous and the officer believed that the defendant was preparing to run or fight; and the defendant had bulges in his pockets and denied knowing what was in them. Id. at 665, 385 P.3d 1253. We concluded that those factors failed to establish objectively reasonable concern for officer safety. Id. at 668-74, 385 P.3d 1253 (observing that furtive movements and nervousness alone do not "suggest aggressiveness or hostility toward an officer" and that the officer articulated no specific reason to believe that the bulges in the defendant's pockets contained a weapon).
Similarly, here, Hargis's concern was essentially based on defendant's furtive movements and demeanor, and the bulges in his pockets. As we have frequently explained, a suspect's furtive movements and nervousness, without more, do not support an inference of likely violence. See, e.g. , State v. Lee , 264 Or. App. 350, 355-57, 332 P.3d 894 (2014) ("[M]ovements by occupants in a stopped car will not always give rise to a reasonable officer-safety concern sufficient to justify a search or seizure."); State v. Peterson , 143 Or. App. 505, 510-11, 923 P.2d 1340 (1996), rev. den. , 327 Or. 521, 971 P.2d 408 (1998) (the defendant's nervousness and furtive movements did not justify reasonable officer-safety concerns). This record does not contain the additional evidence that would be required. Rather, defendant's compliance with Hargis's requests demonstrates just the opposite. See , e.g. , State v. Smith , 277 Or. App. 298, 305, 373 P.3d 1089, rev. den. , 360 Or. 401, 381 P.3d 844 (2016) ("[W]here a defendant cooperates with police, in the absence of any threatening behavior by the defendant, generalized safety concerns * * * are insufficient to justify an officer-safety search."); State v. Senn , 145 Or. App. 538, 545, 930 P.2d 874 (1996) (no objective officer-safety concerns where defendant's demeanor throughout the encounter was "entirely cooperative, nonhostile, and nonthreatening"). Hargis did not testify to the shape or size of the bulges to suggest why defendant's pockets were more likely to contain weapons than other common objects such as a wallet or *809 keys. See Davis , 282 Or. App. at 672, 385 P.3d 1253 (bulges in defendant's pocket *565 not sufficient for objective officer-safety concerns where officer did not "describe the size or shape of the bulges" or "testify that there was a reason to believe that the bulges were caused by a weapon"); State v. Musalf , 280 Or. App. 142, 158, 380 P.3d 1087 (2016) (officer-safety concerns did not justify reaching into defendant's pocket when the officer did not describe the "object's dimensions or shape, nor did he explain what other particular circumstances supported a suspicion that the object was a weapon"). In short, as in Davis , we conclude that the state failed to carry its burden to show that the officer-safety exception applied. Because we conclude that the patdown was unlawful for that reason, it is unnecessary to address defendant's other arguments on appeal.
Reversed and remanded.