296          September 27, 2023          No. 502

Submitted June 21, 2022, affirmed September 27, 2023

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

TIMOTHY JON KECK,
*Defendant-Appellant.*

Polk County Circuit Court
19CR84339; A174471

537 P3d 163

Defendant appeals from a judgment of conviction for felon in possession of a firearm, assigning error to the denial of his motion to suppress evidence obtained during a traffic stop. He challenges the trial court's determinations that officer-safety concerns, reasonable suspicion, and probable cause justified extending the traffic stop to order him out of his truck and to handcuff him, which led to discovery of the disputed evidence. *Held*: The trial court did not err. The officer's belief that defendant was on probation for assault and carried a dagger in the truck supported a conclusion that the officer had reasonable suspicion that justified extending the traffic stop to investigate whether defendant was violating the law. See ORS 166.240 (carrying a concealed dagger is a misdemeanor). Likewise, reasonable suspicion justified the officer's inquiries about weapons and his ordering defendant out of the truck, as those actions reasonably related to the officer's investigation. Within that context, officer-safety concerns justified patting defendant down for weapons. Handcuffing defendant to conduct the patdown was a reasonable precaution taken to ensure that the patdown itself proceeded safely, particularly in light of defendant's statement that he had a knife on his belt and a multi-tool with him.

Affirmed.

Rafael A. Caso, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Meredith Allen, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Jennifer S. Lloyd, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Powers, Judge, and Hellman, Judge.

ORTEGA, P. J.

Affirmed.

**ORTEGA, P. J.**

Defendant appeals from a judgment of conviction for felon in possession of a firearm, assigning error to the denial of his motion to suppress evidence obtained during a traffic stop. He challenges the trial court's determination that officer-safety concerns, reasonable suspicion, and probable cause justified extending the traffic stop to order him out of his truck and to handcuff him, which led to discovery of the disputed evidence. We conclude that the officer's actions were justified and, accordingly, affirm.

"We review [a trial court's] denial of a motion to suppress for legal error and are bound by the trial court's explicit and implicit factual findings if evidence in the record supports them." *State v. Bailey*, 307 Or App 782, 783, 479 P3d 304 (2020). We take most of the relevant historical facts, which are undisputed, from the audio transcript of the officer's body camera recording of the traffic stop. Although not admitted into evidence, "the recording was played into the record at the hearing on the motion to suppress and thereby made part of the transcript," as in *State v. Soprych*, 324 Or App 659, 661, 527 P3d 808 (2023).

Officer McBride pulled defendant over for a traffic violation around 4:30 a.m. while defendant was on his way to do construction work. Upon approaching defendant's truck, McBride saw the handle of a knife tucked between the driver and passenger seats and told defendant, "I see the knife there. *** As long as it stays there, we're good." Defendant complied, as he did throughout the encounter. McBride assessed that it was "a large knife" and, based on his training and experience identifying and evaluating weapons, he believed that what he saw was the handle of a dagger.[1] McBride testified that what he saw at the time triggered officer-safety concerns.

McBride contacted dispatch by radio to run a warrant check on defendant and requested a cover unit. Dispatch informed McBride that defendant was on probation for assault, but defendant denied that when McBride

_____

[1] Carrying a dagger concealed upon the person is a Class B misdemeanor. ORS 166.240.

sought his confirmation.[2] As McBride inquired about the conditions of defendant's probation, he advised, "now I'm just waiting for another officer to get here so you and I are both safe." McBride testified that his impression was that the knife could be an "easily accessible weapon," and that there would be "no reason to have a knife stuffed down in there."

McBride asked whether defendant had "other weapons in the vehicle," and defendant replied that he had his work tools. McBride told defendant that, given the knife's approximately six-inch handle, he thought its blade could be longer, and defendant responded, "probably about 10 inches *** like a machete." McBride told defendant, "That's going to be a prohibited weapon, per your probation, for you to possess." They continued to talk about the knife and about defendant's probation, and McBride asked again, "So besides that knife there, no other weapons?" Defendant responded, "There's another knife over here"—apparently referring to an area inside of the truck—and "I don't know why it's there."

When Officer Hendrick arrived, McBride told him, "So [defendant has] probably about a 14-inch knife sitting down on the seat right next to him" and "I'm going to pull him out, pat[] him down real quick here." McBride then instructed defendant to get out of the truck. After defendant did so, McBride said, "Put your hands behind your back. You're not under arrest. I'm just making sure you don't have any weapons." McBride testified that his plan in asking defendant to get out of the truck was "to make sure there were no other weapons with him."

As defendant stood outside of the truck with his hands behind his back, McBride asked, "So do you have any other weapons on you, on your person right now?" Defendant

---

[2] Defendant explained to McBride that he was not on probation for assault but rather for a 2003 Colorado conviction for attempted contribution to the delinquency of a minor. McBride confirmed with dispatch that records showed the defendant was on probation for assault; however, the Oregon Department of Corrections had provided that information in error. We note these facts as contextual but do not address them in our analysis because they are irrelevant to our conclusion that McBride had reasonable suspicion to extend the stop to conduct further investigation.

replied that he had a pocketknife on his belt and also a multi-tool with him. McBride continued:

> "So palms together. \*\*\* Just for my safety for right now—you're not under arrest, but I'm going to put you in handcuffs \*\*\*.
>
> "\*\*\*\*\*
>
> "Since \*\*\* you are in handcuffs—right now you are not under arrest; you're only being detained. I'm going to advise you of *Miranda* rights, though \*\*\*."

McBride then advised defendant of his *Miranda* rights and asked defendant, "Do you have any other weapons? Firearms? Guns? Drugs? Anything like that?" Defendant told McBride that he had a .22-caliber revolver in the floorboard in the back seat. McBride asked, "May I retrieve that from your vehicle?" Defendant responded, "Yes, sir, you may." McBride searched defendant's truck and retrieved the revolver. During the interaction, defendant was calm, cooperative, not argumentative, pleasant, followed McBride's directions, and did not try to reach for anything, including the knives.

The state charged defendant by indictment with felon in possession of a firearm (the revolver), ORS 166.270, and carrying a concealed weapon (the pocketknife), ORS 166.240. He moved to suppress all the evidence obtained as a result of the search of his person and his truck, including his statements, the knives, and the revolver, challenging McBride's authority to stop him and run the warrant check. Defendant alternatively argued that, even if the stop was lawful, the officer lacked an objective basis for safety concerns and lacked reasonable suspicion or probable cause that defendant had committed a crime to justify extending the traffic stop.[3]

The trial court denied defendant's motion to suppress, first concluding that the traffic stop and the warrant check were lawful. The court also concluded that McBride's observation of the knife handle, along with his

---

[3] Defendant also argued that he did not consent but rather merely acquiesced to the searches of himself and his truck, but he does not renew that argument on appeal.

belief that defendant was not being honest about his probation and that defendant was in fact on probation for assault, despite that belief being mistaken, was enough to give rise to objective officer-safety concerns that justified McBride's questions about weapons.[4] Furthermore, the court concluded that McBride's belief that defendant was a felon on probation—and defendant's admission that he was in fact a felon, though not for assault—indicated that McBride's subjective belief that defendant was violating his probation or was in possession of a restricted weapon was objectively reasonable.[5] The court noted that defendant presented no evidence to contradict that McBride's training and experience justified his belief that what he saw appeared to be the handle of a dagger.

In a stipulated facts trial, the court convicted defendant of one count of felon in possession of a firearm, based on McBride's discovery of the revolver in defendant's truck, and acquitted defendant of the count of carrying a concealed weapon.

On appeal, defendant assigns error to the trial court's denial of his motion to suppress. He argues first that McBride had no objectively reasonable officer-safety concerns to justify expanding the traffic stop to the point of handcuffing him outside the truck. Second, he argues that, in the absence of officer-safety concerns, handcuffing him was an unlawful arrest because McBride did not have probable cause or reasonable suspicion that defendant was a felon in possession of a restricted weapon or was violating his probation. According to defendant, neither McBride's mistaken belief that defendant was on probation for assault nor McBride's observation of the handle of the knife was sufficient to raise probable cause or reasonable suspicion, because the first provided no information about defendant's conduct and the second was speculative.

---

[4] McBride testified that defendant did not know the name of his probation officer, while the transcript of the audio recording shows that defendant provided the name of his probation officer upon McBride's request. However, that fact does not affect any aspect of our analysis.

[5] In his memorandum in support of his motion to suppress, defendant conceded that he was a convicted felon based on a 2003 conviction in Colorado for attempt to contribute to the delinquency of a minor.

The state contends that the trial court did not err. It argues that the court properly concluded that McBride's observation of what he believed to be a dagger next to defendant gave him objectively reasonable officer-safety concerns that justified asking defendant about weapons. The state alternatively contends that McBride's extension of the traffic stop was justified by reasonable suspicion, based on his belief that defendant was on probation for assault and that defendant could be violating his probation or carrying a restricted weapon. According to the state, McBride's reasonable suspicion independently justified taking steps to investigate those crimes, including asking defendant about weapons and ordering him out of the truck. Finally, the state contends that defendant's statement that he had a pocketknife in his belt also raised officer-safety concerns that justified handcuffing and patting defendant down. After reviewing the record, we agree that the trial court did not err.

The Oregon Constitution protects the right of persons to be secure "against unreasonable search, or seizure[.]" Or Const, Art I, § 9. A traffic stop is a temporary investigative seizure that implicates Article I, section 9. *State v. Arreola-Botello*, 365 Or 695, 712, 451 P3d 939 (2019). "Article I, section 9, ensures that officers do not turn minor traffic violations into criminal investigations without a constitutional basis for doing so." *Id.* at 713. All investigative activities during a traffic stop "must be reasonably related to the purpose of the traffic stop or supported by an independent constitutional justification." *State v. Sherriff*, 303 Or App 638, 647, 465 P3d 288 (2020). Justifications for a warrantless extension of a traffic stop exist when an officer's safety is at issue or when the officer develops a reasonable suspicion that the suspect is involved in criminal activity. *See State v. Bates*, 304 Or 519, 524, 747 P2d 991 (1987) (explaining the officer-safety exception to the warrant requirement); *see also State v. Watson*, 353 Or 768, 773-74, 305 P3d 94 (2013) (explaining the reasonable suspicion exception).

The parties' dispute centers on whether officer-safety concerns or reasonable suspicion permitted McBride's actions—asking about weapons, ordering defendant out of

the truck, handcuffing and patting him down—which led to the discovery of the revolver that prompted defendant's arrest and conviction.

We begin by addressing whether McBride's actions were supported by reasonable suspicion from the point that he concluded the investigation of the traffic stop.[6] To establish that an officer had reasonable suspicion,

> "[a] court (1) must find that the officer[] actually suspected that the stopped person had committed a specific crime or type of crime or was about to commit a specific crime or type of crime, and (2) must conclude, based on the record, that the officer['s] subjective belief *** was objectively reasonable under the totality of the circumstances existing at the time of the stop."

*State v. Maciel-Figueroa*, 361 Or 163, 182, 189 P3d 1121 (2017). Reasonable suspicion can be based on inferences if the officer can point to "specific and articulable facts" about the specific defendant "that give rise to a reasonable inference that the defendant committed or was about to commit a specific crime or type of crime." *Id.* at 165. Reasonable suspicion may justify extending a traffic stop to conduct "activities that would not have been permissible based on the original purpose of [a] stop." *Watson*, 353 Or at 785 (during a traffic stop, an officer's "reasonable suspicion that [the] defendant had marijuana in his car" justified asking questions that were reasonably related to the investigation of whether the defendant was in possession of marijuana).

As we explain below, the evidence in the record supports a conclusion that McBride reasonably suspected that defendant was carrying a restricted weapon, and he therefore had independent constitutional justification to investigate that offense. ORS 166.240(1) provides that "any person" who

> "carries concealed upon the person any knife having a blade that projects or swings into position by force of a spring or by centrifugal force, [including] any dirk, dagger *** or any similar instrument by the use of which injury could be

---

[6] On appeal, defendant abandons his prior challenges to the stop and the warrant check, so we limit our review to the lawfulness of McBride's actions after he stopped defendant.

inflicted upon the person or property of any other person, commits a Class B misdemeanor."

"A dagger is defined as a short knife used for stabbing." *State v. Ruff*, 229 Or App 98, 104, 211 P3d 277, *rev den*, 347 Or 43 (2009) (internal quotations omitted).

Here McBride saw what he reasonably believed, based on his training and experience, to be a knife large enough to constitute a dagger. As the record shows, after defendant told McBride that the knife sitting by defendant was "probably about 10 inches," McBride immediately replied, "That's going to be a prohibited weapon, per your probation." Accordingly, he had reasonable suspicion to support extending the traffic stop to investigate whether defendant possessed a restricted weapon. McBride's reasonable suspicion also justified his inquiries about weapons and his ordering defendant out of the truck, as those actions reasonably related to the investigation, particularly in light of defendant's subsequent statements that the knife blade was "probably about 10 inches" and that there was another knife in the truck.

Defendant cites several cases to argue that McBride's conclusion that the knife handle indicated a dagger was mere speculation and did not support reasonable suspicion. *See State v. Nelson*, 263 Or App 482, 487-89, 330 P3d 644 (2014) (a knife with a three and one-half inch blade could not support a conviction for carrying a concealed weapon); *State v. McJunkins*, 171 Or App 575, 579, 15 P3d 1010 (2000) (an officer's description of a concealed knife as "more or less like a skinning knife, a hunting knife" was insufficient evidence that the knife was a "dirk" or "dagger"); *Ruff*, 229 Or App at 104 (a sword did not qualify as a dagger but qualified as an "other similar instrument" for the purpose of an officer's reasonable suspicion that the defendant carried a concealed weapon). He distinguishes his case from *Ruff*, arguing that the knife in his case was not a samurai sword or similar to be compared to the "other similar instrument" provision under the applicable statute.

Neither *Nelson* nor *McJunkins* helps defendant, because in those cases we addressed the sufficiency of the evidence for a conviction rather than for an officer's reasonable

suspicion of criminal activity, as in the present case. *Ruff* likewise does not help defendant, because in that case we assessed whether the sword qualified as an "other similar instrument" after concluding that the sword did not qualify as a dagger, while here the evidence supports a conclusion that McBride had reasonable suspicion to believe that the purported knife was a dagger.[7] McBride was therefore justified under *Sherriff* to investigate whether defendant was violating the law.

We turn to whether McBride's actions—handcuffing and patting defendant down—after ordering defendant out of the truck were also justified. The parties' dispute here centers on whether officer-safety concerns justified handcuffing defendant. In defendant's view, despite the presence of the knife, his "wholly cooperative and calm" demeanor indicated that no safety concerns justified handcuffing him. *Bailey*, 307 Or App at 792 ("where a defendant cooperates with police, in the absence of any threatening behavior by the defendant, generalized safety concerns *** are insufficient to justify an officer[-]safety search"). According to defendant, in the absence of safety concerns, handcuffing him amounted to an unlawful arrest. We are again unpersuaded.

---

[7] Defendant also relies on other cases. *See State v. Moore*, 311 Or App 13, 488 P3d 816 (2021) (odor of unburnt marijuana and indication of the presence of "a very small amount" of marijuana did not support reasonable suspicion that defendant possessed an unlawful amount of marijuana); *State v. Bowen*, 308 Or App 505, 481 P3d 370 (2021) (the act of traveling on a public highway known to be part of a "drug trafficking corridor" and the defendant's nervousness were insufficient to give rise to reasonable suspicion of unlawful delivery of marijuana); *State v. Schmitz*, 299 Or App 170, 448 P3d 699 (2019) ("An officer's training and experience may help an officer interpret a specific and articulable fact in a given situation or event, but training and experience is not, in and of itself, a specific and articulable fact that can *** establish reasonable suspicion of current drug possession."). Again, none of these cases helps defendant. Defendant relies on *Schmitz* to argue that McBride failed to explain what in his training and experience made him think that the knife handle that he observed was of a dagger, but *Schmitz*'s conclusion that the officer failed to meet the reasonable suspicion standard was based on the officer's lack of a "specific and articulable fact particularized to [the] defendant," rather than on the officer's training and experience. *Schmitz*, 299 Or App at 178. We do not address *Bowen* and *Moore*, because defendant does not explain how those cases relate to his case, except for stating that "[a]s in those cases, the further inferential leaps from the observation of the knife-handle to conclude that the knife was likely a dirk or dagger were steps too far."

The officer-safety exception to the warrant require-
ment permits an officer

> "to take reasonable steps to protect himself or others if,
> during the course of a lawful encounter with a citizen, the
> officer develops a reasonable suspicion, based upon specific
> and articulable facts, that the citizen might pose an imme-
> diate threat of serious physical injury to the officer or to
> others then present."

*Bates*, 304 Or at 524-25. The state carries a two-part burden
if it invokes the officer-safety doctrine to justify a warrant-
less search. First, the state must prove that an officer had
a "subjective reasonable suspicion" that the defendant posed
an immediate threat of serious physical injury. *State v.
Ramirez*, 305 Or App 195, 205, 468 P3d 1006 (2020). Second,
the state must prove that, under the totality of the circum-
stances, the officer's subjective safety concerns were objec-
tively reasonable, and that the officer's response to those
concerns was objectively reasonable. *Id*. The totality of the
circumstances for the purpose of our evaluation includes the
"entire encounter as it objectively transpired." *Id*. at 207. "To
be objectively reasonable, the officer's safety concerns must
be based on facts specific to the particular [suspect], not on
intuition or a generalized fear that the person may pose a
threat to the officer's safety." *State v. Sarmento*, 296 Or App
763, 768, 439 P3d 994 (2019) (internal quotation marks
omitted).

Here, we likewise agree with the trial court that
the state met its burden to show that McBride had specific
articulable officer-safety concerns that justified his actions
up to the point of handcuffing defendant. As an initial mat-
ter, reasonable suspicion justified McBride's investigation of
defendant for possible law violations, as explained above.

Within the context of McBride's lawful investigation,
officer-safety concerns likewise justified patting defendant
down for weapons. *See State v. Castillo-Lima*, 274 Or App 67,
72, 360 P3d 597 (2015), *rev den*, 359 Or 39 (2016) ("an officer
may conduct a patdown of a person under the officer-safety
exception if the officer has a reasonable basis to believe that
the person poses a threat to the officer's safety"). As the trial
court found, the specific facts known to McBride at the time

he ordered defendant out of the truck (though not correct) were that defendant had a knife with an approximately 10-inch blade with him, was not being straight about his probation, and acknowledged that he had other knives in the vehicle. Despite defendant's cooperative behavior, those facts support the court's conclusion that, "under the totality of the circumstances," McBride's "subjective safety concerns were objectively reasonable." *Ramirez*, 305 Or App at 205; *compare Bailey*, 307 Or App at 794 ("the mere fact that a person possesses a weapon does not, *per se*, render officer-safety concerns objectively reasonable") *with City of Portland v. Weigel*, 276 Or App 342, 345, 367 P3d 541 (2016) (given other circumstances, officers were not required to trust a suspect's cooperative behavior in making a safety-concern determination). Accordingly, under the *Bates* standard, patting defendant down was a reasonable step to ensure McBride's safety during the investigation.

Officer-safety concerns further justified McBride's decision to handcuff defendant. In addition to the facts above, defendant's acknowledgment that he had a knife on his belt and a multi-tool with him, immediately after McBride specifically indicated that he was going to pat defendant down for weapons, substantiated McBride's safety concerns. *Compare State v. Austin*, 145 Or App 217, 224, 929 P2d 1022 (1996), *rev den*, 325 Or 368 (1997) (a defendant's admission that he had a BB gun during an investigatory stop was a reasonable basis that justified ordering him to the ground for officer-safety concerns) *with State v. Lora*, 312 Or App 666, 673, 492 P3d 757 (2021) (officers' observation of a pocketknife on a suspect's belt did not justify handcuffing the suspect for officer safety while patting him down because, in addition to the suspect being cooperative throughout the encounter, at the time the officers decided to handcuff the suspect, the knife had been removed by the officers). Here, despite defendant's cooperative conduct, the totality of the circumstances—including that defendant still had the knife on his person—at the time of the patdown supports a conclusion that handcuffing him to conduct the patdown was a reasonable "precaution[] taken to ensure that the patdown itself proceeded safely." *Bailey*, 307 Or App at 790-91 (in assessing whether officer-safety concerns existed, we look at

"whether, at the time that the[] [officer] decided to conduct a patdown search, it was objectively reasonable for the officer[] to suspect that defendant posed an immediate threat of serious physical injury").

Article I, section 9, therefore did not forbid McBride patting defendant down for weapons or handcuffing defendant to conduct the patdown, because those were "reasonable steps to protect" McBride as he lawfully investigated whether defendant possessed restricted weapons. *Bates*, 304 Or at 524.

We do not address any issues concerning the duration of defendant's handcuffing, because defendant's challenge is focused on whether McBride had reasonable suspicion or safety concerns to justify handcuffing him; he does not object to the duration of the handcuffing. *See State v. Madden*, 315 Or App 787, 795, 502 P3d 746 (2021) (handcuffing a suspect may transform a detention associated with a stop into an arrest when the duration of the handcuffing outlasts the officer-safety considerations). We likewise do not address any matters relating to after defendant was handcuffed—which includes the lawfulness of the search of defendant's truck and the seizure of the revolver that gave rise to defendant's conviction—because defendant does not present any specific argument concerning those matters. We thus assume that defendant validly consented to the search of his truck upon receiving the proper *Miranda* warnings, which justifies the seizure of the revolver.

In sum, we conclude that McBride's actions up to the point of handcuffing defendant did not violate defendant's constitutional rights. The trial court therefore did not err in denying defendant's motion to suppress.

Affirmed.