No. 525 July 31, 2024 107

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

KLINT ADAM WHITLOCK,
*Defendant-Appellant.*

Lane County Circuit Court
19CR15412; A176847

Bradley A. Cascagnette, Judge.

Argued and submitted April 24, 2023.

Stephanie Hortsch argued the cause for appellant. On the brief were Ernest G. Lannet, Chief Defender, and Mark J. Kimbrell, Deputy Public Defender, Criminal Appellate Section, Office of Public Defense Services.

Emily N. Snook, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, Powers, Judge, and Hellman, Judge.

HELLMAN, J.

Reversed and remanded.

**HELLMAN, J.**

Defendant appeals from a judgment of conviction for felon in possession of a restricted weapon, ORS 166.270(2), assigning error to the trial court's denial of his motion to suppress evidence obtained during an officer-safety search.[1] He asserts that the police officer's subjective suspicion that defendant posed an immediate threat of serious physical injury to the officer was not objectively reasonable. As a result, defendant argues, the warrantless search was not justified by the officer-safety exception, and the trial court should have granted his motion to suppress. We agree, and reverse.

"'We review [a trial court's] denial of a motion to suppress for legal error and are bound by the trial court's explicit and implicit factual findings if evidence in the record supports them.'" *State v. Keck*, 328 Or App 296, 298, 537 P3d 163 (2023) (quoting *State v. Bailey*, 307 Or App 782, 783, 479 P3d 304 (2020)).

"Article I, section 9, of the Oregon Constitution recognizes a citizen's right 'to be secure in their persons * * * against unreasonable search, or seizure.' To that end, warrantless searches are presumed to be unreasonable and must be justified by a recognized exception to the warrant requirement." *Bailey*, 307 Or App at 788. The warrant exception at issue here, the officer-safety exception, permits

"'an officer to take reasonable steps to protect himself or others if, during the course of a lawful encounter with a citizen, the officer develops a reasonable suspicion, based upon specific and articulable facts, that the citizen might pose an immediate threat of serious physical injury to the officer or to others then present.'"

*Id.* (quoting *State v. Bates*, 304 Or 519, 524, 747 P2d 991 (1987)).

---

[1] ORS 166.270(2) provides in relevant part:

"Any person who has been convicted of a felony under the law of this state or any other state, or who has been convicted of a felony under the laws of the Government of the United States, who owns or has in the person's possession or under the person's custody or control any instrument or weapon having a blade that projects or swings into position by force of a spring or by centrifugal force * * * commits the crime of felon in possession of a restricted weapon."

   "'[U]nder the officer-safety doctrine, the state bears a two-part burden of proof and persuasion' to justify a warrantless search." *Bailey*, 307 Or App at 789 (quoting *State v. Ramirez*, 305 Or App 195, 205, 468 P3d 1006 (2020)). Under the first part, "the state must prove that an officer had subjective reasonable suspicion that the person searched posed an immediate threat of serious physical injury." *Id.* (internal quotation marks omitted). Then, under the second part, "the state must prove that, under the totality of the circumstances, (1) the officer's subjective safety concerns of an immediate threat of serious physical injury were objectively reasonable, and (2) the officer's response to the safety concerns was, itself, objectively reasonable." *Id.* (internal quotation marks and ellipses omitted). Because defendant does not challenge the officer's subjective suspicion, we focus on whether that suspicion was objectively reasonable.

   We briefly address the underlying facts. A police officer responded to a car accident and interacted with defendant for less than two minutes before conducting an officer-safety search. During that search, he discovered a spring-loaded knife on defendant's person. Defendant filed a pretrial motion to suppress evidence obtained from the search. The trial court found the following:

> "[T]he officer responded to this scene because there was a report of erratic driving, leading to a truck in a ditch. It was reported that [defendant] had left the scene and returned.
>
> "When the officer arrived at the scene and confronted [defendant] originally, his hands were in his pockets at the outset of the investigation.
>
> "[The officer] saw a bulge in the pants' pocket. Throughout this interaction, [defendant] was extremely emotionally labile. He made a statement that he was recently involved in a domestic breakup of some sort that led to the erratic behaviors leading up to this encounter.
>
> "And, further, [defendant] was exhibiting drastic hand movements, fluctuating from wrapping around his body to swinging swiftly and abruptly out towards the side, including next to and or touching his pants' pockets."

The court thereafter denied defendant's motion to suppress, concluding that those facts led to a "subjective, reasonable belief of an immediate threat of serious, physical injury" and that under the totality of the circumstances, the officer's concern was objectively reasonable.

We accept the court's factual findings and nonetheless conclude that those findings do not show that "the officer's subjective safety concerns of an immediate threat of serious physical injury were objectively reasonable." *Id.* To determine whether an officer's concern for safety is objectively reasonable, we "examine the totality of the circumstances as they reasonably appeared to the officer[] at the time of the patdown." *State v. Jackson*, 190 Or App 194, 199, 78 P3d 584 (2003), *rev den*, 337 Or 182 (2004); *see also State v. Amell*, 230 Or App 336, 341, 215 P3d 910 (2009) ("Whether a gesture or movement will give rise to a reasonable suspicion that a citizen poses an immediate threat of serious physical injury depends on the individual circumstances of each case."). "What makes an officer's subjective safety concern objectively reasonable isn't that the officer thought it was reasonable, or even that the officer's subjective concern is supported by some evidence." *Ramirez*, 305 Or App at 206. "Rather, the concern must be reasonable more broadly, to a standard [that] society views as objectively reasonable." *Id.* at 206-07.

In considering the totality of the circumstances, we recognize that human interactions cannot be appropriately reviewed by examining individual facts independent of their context. *Jackson*, 190 Or App at 199; *see also Ramirez*, 305 Or App at 211 (explaining that the court does not consider the points relied upon by the state in isolation because "[a] totality of the circumstances approach does not lend itself to divide and conquer tactics"). Importantly, human communication involves more than just words; body language, tone, implications, and other subtle cues are also involved. As such, "we consider the weight to be given to each fact, then evaluate the facts in the totality, recognizing that multiple facts may 'combine to form a whole greater than the sum of its parts.'" *Ramirez*, 305 Or App at 211-12 (quoting *State v. Radtke*, 272 Or App 702, 708, 358 P3d 1003 (2015)).

The bodycam video of the encounter substantially aids our assessment of this case because it provides a contemporaneous, holistic, and accurate depiction of the encounter.[2] That video, along with the officer's hearing testimony, provide a comprehensive record to determine whether the officer's subjective suspicion was objectively reasonable.

We understand the state to argue that the officer's training and experience, combined with the facts surrounding the interaction, supported the trial court's determination that the officer's subjective suspicion was objectively reasonable. The state highlights the following facts in support of objective reasonableness: The officer arrived at the scene of an accident and saw a "highly charged argument"; the officer knew that defendant had left the scene and returned; defendant displayed "elevated emotions throughout the short interaction"; the officer knew that elevated emotions "could easily turn to violent behavior"; the officer observed "a bulge that was potentially a weapon"; and the officer observed that defendant was "fidgeting and moving constantly, including twice touching the bulge within ninety seconds." As we explain below, we disagree.

We first consider the situation in which the officer encountered defendant. The officer was responding to a call about a "reckless or intoxicated" driver and was aware before arriving to the scene that defendant had been in a crash and reportedly left the scene. Although reckless or intoxicated driving can pose serious danger to others, it does not inherently pose a risk to the safety of the officers who are called to investigate it. When the officer arrived, defendant was involved in a "heated verbal exchange" with some other people. Even though people were yelling at defendant and called him offensive names, defendant did not react violently. Instead, he responded, "It was an accident, I'm sorry." He also willingly followed the officer when directed without complaint, protest, or demonstrating any aggression.

Defendant's continued lack of aggression and general compliance throughout the pre-patdown interaction weighs against objective reasonableness. The bodycam video

---

[2] The state never challenged the accuracy of the bodycam video, and we have no independent reason to question its accuracy.

shows that during the encounter defendant's shoulders were slumped and he was folded in on himself. For most of the encounter, defendant's hands were folded across his chest. He cried off and on throughout the encounter and wiped tears from his eyes multiple times. Although defendant made hand movements while talking that the trial court found to be "drastic," those hand movements, in the context of this encounter, did not provide objective support that the officer was in "immediate threat of serious physical injury." *Bailey*, 307 Or App at 789; *see also State v. Rodriguez-Perez*, 262 Or App 206, 216, 325 P3d 39 (2014) (Nothing about the defendant's physical behavior "objectively indicate[d] that he was an immediate threat."). "[A] suspect's furtive movements and nervousness, without more, do not support an inference of likely violence." *State v. Nye*, 295 Or App 559, 564, 435 P3d 805 (2019).

As to defendant's emotional state, we accept the trial court's finding that defendant was "extremely emotionally labile." But the record shows that defendant's emotions did not include anger, aggressiveness, or hostility. Instead, defendant alternated between appearing distraught about the circumstances surrounding the car accident and about difficult circumstances surrounding his marital relationship. Even though defendant was in considerable personal distress, he responded appropriately to the officer's questions and never displayed any threatening behavior toward the officer. While a defendant's attitude and demeanor are not dispositive, "we recognize that a defendant's compliant behavior may play a significant role in our determination of whether officer-safety concerns justify a search." *Bailey*, 307 Or App at 792.

Of course, demeanor is not considered in isolation. Instead, we weigh demeanor "in the context of any other circumstances present or facts that an officer may have known about the person at the time." *Id.* Here, the officer cited in support of his decision to pat down defendant that he knew that defendant had an earlier dispute with his wife. The officer testified that "it's not uncommon" for people who are experiencing breakups in domestic partnerships to be "very distraught or violent with each other or with third-party

bystanders." The officer further explained that "[d]omestic violence calls for service are some of the most dangerous things for police officers to go to because we're now involved in something very personal *** to people," because people involved in breakups who have escalated emotions can sometimes become violent. However, the officer never connected that general knowledge to the specific circumstances in which the officer encountered defendant.

Although defendant had been in a dispute with his wife before the accident, the officer was not responding to a domestic violence call related to that dispute. He was responding to reports of a car accident in which defendant was not accompanied by his wife. "To be objectively reasonable, 'the officer's safety concerns must be based on facts specific to the particular person searched, not on intuition or a generalized fear that the person may pose a threat to the officer's safety.'" *State v. Davis*, 282 Or App 660, 667, 385 P3d 1253 (2016) (quoting *Jackson*, 190 Or App at 198); *see also State v. Prouty*, 312 Or App 495, 507-08, 492 P3d 734 (2021) (concluding that an officers' suspicion was not objectively reasonable due to a "lack of specific and articulable facts that would reasonably create a fear for the safety of the officer or others" (internal quotation marks and ellipses omitted)).

We also consider the officer's knowledge that defendant had left the scene and then returned. This fact carries almost no weight in the analysis. The officer-safety doctrine does not exist to prevent people from fleeing or frustrating investigations. It serves to protect an officer when a citizen "might pose an immediate threat of serious physical injury to the officer or to others then present." *Bailey*, 307 Or App at 788 (internal quotation marks omitted). Even if defendant's behavior led to the officer fearing that defendant might flee "or otherwise frustrate" investigation efforts, those concerns do not equate with a threat of serious physical injury to the officer, and as such cannot support a determination that "the officer's subjective safety concerns of an immediate threat of serious physical injury were objectively reasonable." *Id.* at 789 (internal quotation marks omitted).

It is within this entire context that we consider the officer's observation of a bulge in defendant's pocket, and

defendant "next to or touching" his pocket twice: first, when he had both hands in his pockets as he complied with the officer's request to accompany him to a different area so they could talk; and second, when he "patted" his pocket once after swinging his arms out to the side in the middle of a discussion with the officer about the events that led to defendant leaving and coming back.[3] The officer testified that he knew it was "pretty typical" for people to touch their pocket when they want to make sure they have a specific thing. He further explained, "so, when I kept seeing his hand go to that pocket, it was an indicator to me that there's something in there—potentially a weapon that I need to make sure is safe for me to be doing an investigation." On cross-examination, the officer described the "bulge" in more detail:

> "[Defense Counsel]:  Okay. So, his hand was outside of his pocket, was it—he didn't stuff his hands back in his pockets like he had when he was first talking to you?
>
> "A:  Correct. So, he's putting is [*sic*] hand on a bulge that I can see through his pocket.
>
> "[Defense Counsel]:  Okay.
>
> "A: It's like if you had a big set of car keys or for example a large knife or a gun—
>
> "[Defense Counsel]:  Right.
>
> "A:  —so those are ladies—like ladies' pockets are a lot higher than men's so regular guy jeans is right where they're going to rest, you're going to put a knife or keys or anything that's going to hang down there.
>
> "[Defense Counsel]:  Or bananas or pieces of fruit or dog toys—I mean, we don't know.

---

[3] We recognize that on the bodycam video defendant can be heard to say that he has money and a pocketknife in his pocket prior to the officer completing the patdown. However, that fact does not change our disposition in this case for three reasons. First, the state has never relied on that fact to demonstrate objective reasonableness of the officer's actions. Second, the officer's actions on the video and his testimony at the hearing demonstrate that he did not hear defendant mention the pocketknife, and so that fact did not play a role in his decision to conduct the patdown. Third, the fact that defendant had a pocketknife is not dispositive, because "a defendant's possession of a weapon * * * does not necessarily support a reasonable suspicion of an immediate threat to officer safety." *Rodriguez-Perez*, 262 Or App at 217 (citing *State v. Dyer*, 157 Or App 326, 332, 970 P2d 249 (1998)).

"A:   Sure, sure, that's very true.

"So, anything bulgy but yeah, and I'm looking for weapons—specifically looking for weapons when I'm doing a patdown search. Had I found a banana, we wouldn't be here today."

That testimony lacks specific and articulable facts that support an objectively reasonable belief that defendant might have possessed a weapon. The mere fact that the bulge could "potentially" be a weapon is insufficient. *Davis*, 282 Or App at 672 (concluding that the bulges in the defendant's pockets did not contribute to an objectively reasonable officer-safety concern where the officer "did not * * * describe the size or shape of the bulges" or otherwise "testify that there was a reason to believe that the bulges were caused by a weapon"). Nor is it enough that the officer mentioned a knife or a gun as two of the objects that could have caused the bulge: The list of items that the officer agreed could have formed the bulge in defendant's pocket (described as "anything bulgy") included such disparate items that it gave no specific indication of any shape or dimension that would indicate a weapon. Indeed, the officer admitted that the bulge resembled a "big set of car keys," and we have previously held that officers must provide facts to support that a bulge in a pocket was not a common object like car keys. *Nye*, 295 Or App at 564 (explaining that the officer "did not testify to the shape or size of the bulges to suggest why [the] defendant's pockets were more likely to contain weapons than other common objects such as a wallet or keys"). Moreover, apart from a description of the bulge, the officer identified no other circumstances that supported his suspicion that the object causing the bulge was a weapon. Indeed, instead of providing facts specific to this case, the officer testified that he "almost always" pats people down for weapons during DUII investigations, undercutting a conclusion that he made a case-specific determination regarding the patdown in defendant's case.

Having reviewed the totality of the circumstances of the encounter, we conclude, as we did in *Rodriguez-Perez*, 262 Or App at 215, that "[n]either defendant's demeanor nor his physical actions, either individually or collectively, would

support a reasonable suspicion that defendant posed an immediate threat of serious physical injury" to the officer. The officer's subjective suspicion that defendant posed an immediate threat of serious physical injury was not objectively reasonable. The trial court therefore erred in denying defendant's motion to suppress.

Reversed and remanded.