No. 121 February 20, 2025 91

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

NATHAN LEE DACQUISTO,
*Defendant-Appellant.*

Lane County Circuit Court
22CR24229; A181094

Erin A. Fennerty, Judge.

Argued and submitted January 9, 2025.

Matthew Blythe, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Oregon Public Defense Commission.

Elise Josephson, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Stacy M. Chaffin.

Before Aoyagi, Presiding Judge, Egan, Judge, and Joyce, Judge.

JOYCE, J.

Reversed and remanded.

**JOYCE, J.**

Defendant appeals from a conviction of felon in possession of a restricted weapon, assigning error to the trial court's denial of his motion to suppress evidence obtained during an officer-safety search. We conclude that the officer conducting the search did not have an objectively reasonable suspicion that defendant posed an immediate threat of serious physical injury. Therefore, the warrantless search was not authorized by the officer-safety exception to the warrant requirement of Article I, section 9, of the Oregon Constitution. Accordingly, we reverse and remand.

We review the denial of a motion to suppress for legal error and are bound by the trial court's explicit and implicit factual findings if evidence in the record supports them. *State v. Whitlock*, 334 Or App 107, 108, 554 P3d 825 (2024). We state the facts, which are taken from the bodycam footage of the encounter and the officer's testimony at the motion to suppress hearing, consistently with that standard of review.

In the early afternoon, Trooper Maher responded to a report of a domestic dispute in a residential area. After Maher parked his car, he saw defendant and a woman, who was later identified as defendant's neighbor, walking towards him. Maher asked defendant to "step over here with me" on the side of the road and asked defendant which house he lived in. Defendant complied and pointed to a house across the street and down a long driveway. Defendant's t-shirt was torn on both sides at the collar, his face was puffy under one eye, and he was smoking a cigarette.

Maher asked defendant what was going on and defendant said he had had a toothache for days and he had been asleep because he had been drinking. Maher interrupted him and asked if anyone in the house was injured. Defendant said no, then pointed to the puffy area under his eye and said he was the one who had asked for the police to be called. Defendant said, unprompted, that he "didn't fucking touch her, bro," and "I'm going to prison, bro, I know I am." Around that time, Maher radioed a backup officer and told them that that officer could slow their response to the scene.

Defendant's girlfriend, who was in the house with their two children, came out of the house. Maher directed her to go back inside, which she did. Maher asked defendant for his ID and defendant reached into the back pocket of his pants, got his wallet out, and handed Maher his ID. Maher asked defendant why he assumed he was going back to prison, and defendant said because he had been to prison before. Maher asked defendant if he "laid hands on" his girlfriend, and defendant said no. Maher asked defendant if his girlfriend hit him, and he said, "I'm going to say no." Maher questioned defendant about his living situation and his kids and girlfriend, and defendant answered each question. Maher asked defendant how he got the injury on his face, and defendant shrugged his shoulders, smiled, and said something inaudible. Throughout the encounter, defendant appeared somewhat nervous and distressed, pacing, rocking side to side, and putting his hands on his head and face. At no point did defendant raise his voice or make any threatening or furtive movements.

Maher told defendant that he was going to pat him down and asked defendant if he had any weapons. Defendant said he had a pair of brass knuckles in his back pocket. Defendant complied with Maher's directions during the patdown, and Maher removed the brass knuckles from defendant's pocket. When a second officer arrived, Maher told the officer that defendant had been "real cooperative."

Defendant moved to suppress the brass knuckles, arguing that Maher's search of defendant was unlawful because Maher did not have reasonable suspicion that defendant posed an immediate threat of serious physical injury. The state argued that under the totality of the circumstances—including that it was a domestic dispute with an unknown aggressor, that defendant appeared agitated and nervous, that defendant told Maher he was going back to prison, and that Maher was the only officer on the scene—Maher's belief that defendant posed a safety risk was objectively reasonable.

At the suppression hearing, Maher testified that "domestic violence situations can be one of the most dangerous ones * * * we respond to based on simply the tempers

sometimes are very elevated when we arrive." He further testified that situations where he does not know who the aggressor is "are especially dangerous because * * * there's even more unknowns." Maher testified that he had safety concerns because of defendant's "actions and demeanor," including that defendant was "smoking a cigarette right away," and defendant's comment about not wanting to go back to prison. The trial court denied the motion, noting that it was a "physical-based domestic violence situation," that the aggressor was not known, and that defendant said he had been in prison before.

On appeal, defendant challenges that ruling, reprising his argument that the search was unlawful because Maher did not reasonably believe that defendant posed an immediate threat. As explained below, we agree.

Under Article I, section 9, warrantless searches "are presumed to be unreasonable and must be justified by a recognized exception to the warrant requirement." *Whitlock*, 334 Or App at 108 (internal quotation marks omitted). One such exception is the officer-safety exception, which permits an officer "to take reasonable steps to protect himself or others if, during the course of a lawful encounter with a citizen, the officer develops a reasonable suspicion, based upon specific and articulable facts, that the citizen might pose an immediate threat of serious physical injury to the officer or to others then present." *State v. Bates*, 304 Or 519, 524, 747 P2d 991 (1987). The state has the burden to prove that, under the totality of the circumstances, the officer's subjective safety concerns were objectively reasonable. *Whitlock*, 334 Or App at 109. Whether an officer's safety concerns were objectively reasonable is based on "facts specific to the particular person searched, not on intuition or a generalized fear that the person may pose a threat to the officer's safety." *State v. Jackson*, 190 Or App 194, 198-99, 78 P3d 584 (2003), *rev den*, 337 Or 182 (2004).

As it did below, in arguing that Maher's safety concerns were objectively reasonable, the state relies on the following facts: it was a domestic violence dispute with an unknown aggressor; defendant "had obviously been involved in a physical altercation" and the other party to the

altercation "was just across the street"; defendant appeared agitated and nervous; defendant said he did not want to go back to prison; defendant told Maher he "didn't fucking touch" his girlfriend; and defendant "was smoking a fresh cigarette."[1] We consider each of those factors while cognizant of our obligation to consider them in the totality of the circumstances and not in isolation.

To begin, the state does not elaborate on why defendant's statement that he did not touch his girlfriend would contribute to Maher's safety concerns, and we do not give weight to that factor. Nor do we give weight to the fact that defendant's girlfriend was "just across the street." As defendant points out, neither Maher nor the trial court relied on that as a factor contributing to Maher's safety concerns, and there is no evidence in the record that the location of defendant's girlfriend contributed to the dangerousness of the situation.

As to defendant's "fresh" cigarette, the state argues that it supports an inference that the altercation defendant was involved in had happened immediately before Maher arrived, and because the altercation was close in time, defendant was more likely to be dangerous. The state does not point to any other evidence in the record that would establish the timing of the altercation or show that the timing contributed to objectively reasonable officer-safety concerns and again, this was not a factor relied upon by the trial court. Under those circumstances, defendant's act of smoking a "fresh" cigarette, without more, does not support a reasonable inference that defendant posed an immediate threat of serious physical injury.

With respect to Maher's safety concerns based on domestic disputes being especially dangerous, Maher did not connect those concerns to anything specific to defendant and thus his concerns amount to nothing more than a "generalized suspicion." *See State v. Redmond*, 114 Or App 197, 201, 834 P2d 516 (1992) (cautioning that officer's perceptions about the dangerousness of gang members "is the kind of

---

[1] At oral argument the state also contended that defendant's statement about drinking contributed to the officer's safety concerns and that defendant's evasive answers about the injury to his face counteracted defendant's cooperativeness. Because those arguments were not relied on by the officer, the state, or the trial court, we do not address them.

generalized suspicion that seldom will constitute a reasonable suspicion" but finding that the officer's generalized understanding "became a specific and particularized reality when he saw that defendant was armed with a knife").

As to defendant's agitation and nervousness, we have consistently held that those facts, without more, do not give rise to reasonable officer-safety concerns. *See State v. Nye*, 295 Or App 559, 564, 435 P3d 805 (2019) ("[A] suspect's furtive movements and nervousness, without more, do not support an inference of likely violence."); *State v. Rodriguez-Perez*, 262 Or App 206, 215, 325 P3d 39 (2014) (the fact that the defendant became "'very agitated'" at the mention of weapons did not support a reasonable belief that defendant posed an immediate danger because the defendant "did not make any aggressive, hostile, or threatening movements, nor did he make any threatening remarks"). Further, defendant's cooperativeness with Maher's questions and commands weighs heavily against a conclusion that Maher's subjective safety concerns were objectively reasonable. *See Whitlock*, 334 Or App at 111 ("Defendant's continued lack of aggression and general compliance throughout the pre-patdown interaction weighs against objective reasonableness."); *State v. Bailey*, 307 Or App 782, 792, 479 P3d 304 (2020) (recognizing that "a defendant's compliant behavior may play a significant role in our determination of whether officer-safety concerns justify a search").

Turning to defendant's statement that he had been in prison before and did not want to go back, that factor is entitled little weight because Maher did not know why defendant had been in prison or whether defendant had committed violent crimes. *See State v. Zumbrum*, 221 Or App 362, 369, 189 P3d 1235 (2008) (officer's knowledge that the defendant was on post-prison supervision did not contribute to reasonable officer-safety concerns because the officer "did not know the basis for defendant's prior conviction, nor was he otherwise aware of whether defendant had a history of violent behavior"); *see also State v. Steffens*, 250 Or App 742, 750, 282 P3d 888 (2012) ("An officer's knowledge of the defendant's past conduct is relevant to the officer-safety inquiry; however, where past conduct is not coupled with

any indication that the defendant is *currently* dangerous, it is unlikely to be determinative." (Emphasis in original.)).

In sum, although we are mindful that "it is not our function to uncharitably second-guess" an officer's "life-or-death decisions," *Bates*, 304 Or at 524, we conclude that the foregoing facts—considered in their totality—do not support an objectively reasonable suspicion that defendant posed an immediate threat of serious physical injury. *See, e.g.*, *Whitlock*, 334 Or App at 111-13 (officer's suspicion was not objectively reasonable where the defendant displayed "elevated emotions"; the officer observed a "bulge that was potentially a weapon"; the defendant was "fidgeting and moving constantly, including twice touching the bulge"; and the defendant had an earlier dispute with his wife and the officer knew that people involved in domestic disputes "who have escalated emotions can sometimes become violent"); *Zumbrum*, 221 Or App at 365-66, 369 (officer's suspicion was not objectively reasonable where officer knew the defendant was on post-prison supervision but did not know the basis for the prior conviction; defendant appeared "abnormally nervous"; location was an area known for illegal drug activity; and the defendant was compliant). Accordingly, the trial court erred in denying defendant's motion to suppress.

Reversed and remanded.